65 Wn.2d 788 (1965)
399 P.2d 516
THE METROPOLITAN PARK DISTRICT OF TACOMA, Respondent,
v.
Unknown Heirs of JOHN L. RIGNEY, Deceased, Defendants,
ANNE HENLY FREEMAN et al., Appellants.[*]
No. 37301.
The Supreme Court of Washington, Department Two.
February 25, 1965.
Binns & Petrich (James J. Mason, of counsel), and W. Gerald Lynch, for appellants.
Willis C. Oldfield, for respondent.
*789 HAMILTON, J.
The Metropolitan Park District of Tacoma initiated this action against the known and unknown heirs of one John L. Rigney, seeking to quiet title to a certain parcel of real estate located in the city of Tacoma and originally owned and conveyed by John L. Rigney. The defendant heirs counter-claimed, alleging breach of a condition subsequent specified in the conveyance of John L. Rigney and a resultant forfeiture. All parties moved for summary judgment. The trial court granted the motion of the Metropolitan Park District and entered a decree quieting title in the district. Certain of the heirs appeal.
The essential facts are not in dispute. On August 2, 1884, John L. Rigney and his wife conveyed by deed the property in question to the Tacoma Light and Water Company, a corporation. The deed, in substance, recites that the property is to be used for the purpose of providing a right of way "to conduct fresh water by ditch, canal, flume or other conduit for the supply of the City of Tacoma and its inhabitants," and the grant is made subject to the following provision:
"... that if the said strip of land shall not be appropriated by said Company, its successors or assigns, nor by them be used for the purpose aforesaid, by or before the 1st day of January, 1886, or if at any time thereafter said Company, its successors or assigns should change the line of their said aqueduct and cease to use said strip of land for the purpose of conducting such water for the supply of the City of Tacoma, that then and from thenceforth, and at all times afterwards, it shall and may be lawful to and for the said party of the first part their heirs, or assigns into and upon the said strip of land hereby granted to reenter, and the same to have again, repossess and enjoy in his and her first and former Estate, this Indenture or anything herein to the contrary thereof notwithstanding...."
The Tacoma Light and Water Company entered upon and utilized the property for the purpose intended prior to January 1, 1886, and until 1893 when, by deed dated June 22, 1893, and recorded September 27, 1894, it conveyed the property to the city of Tacoma. The deed to the *790 city provided that title to the property was "subject to the same conditions to which the same are now subject." The city continued the water supply usage until sometime prior to February 1, 1905, when such use was discontinued and the property, by ordinance, set aside for park purposes. The Metropolitan Park District was created in 1907, and succeeded the city in the management of the property as a park, with ownership being formalized in the district by deed dated March 13, 1951. In 1920, or thereabouts, tennis courts for public use were constructed and have since been maintained upon the property, although in recent years the courts have fallen in disrepair and are rarely, if ever, used.
All parties and the trial court proceeded upon the basis that the Rigney deed of the property in question conveyed a fee simple estate subject to a condition subsequent; that the condition had been permanently broken prior to 1905; and that neither the Rigneys nor their heirs had claimed a forfeiture or right of re-entry until the counter-claim in the instant suit.
On appeal, we are not called upon to interpret or treat the original grant as conveying anything other than a fee simple estate subject to a condition subsequent. The only questions presented for our determination are (1) whether the grantee of such an estate may acquire title by adverse possession following a breach of the condition subsequent but prior to a claim of forfeiture, and, if not, (2) whether the lapse of an extensive period of time between a breach and an election of forfeiture waives or otherwise extinguishes the condition.
We answer the first question in the negative and the second in the affirmative.
[1] A fee estate subject to a condition subsequent is the kind of defeasible estate in fee which does not terminate automatically by the breach or happening of the condition or event specified. Title to and enjoyment of the estate following the occurrence remain in the grantee or his successors until affirmative action is taken by the grantor or his heirs to bring about a forfeiture or reversion *791 of the estate. Mouat v. Seattle, Lake Shore & Eastern R. Co., 16 Wash. 84, 47 Pac. 233 (1896); Lewiston Water & Power Co. v. Brown, 42 Wash. 555, 85 Pac. 47 (1906); Halvorsen v. Pacific Cy., 22 Wn. (2d) 532, 156 P. (2d) 907, 158 A.L.R. 555 (1945); Restatement, Property § 57, p. 196; 1 Tiffany, Real Property (3d ed.) §§ 187, 188, pp. 301, 302, 303; 4A Thompson on Real Property (1961) § 1979, pp. 405-410; 2 Powell on Real Property ¶¶ 188, 191, pp. 39, 57. The future interest retained in the grantor under such a grant is termed a "right of entry" or "power of termination," as distinguished from the "possibility of reverter" existing in a fee determinable estate, and
"... In terms of legal operation of the two future interests, the principal distinction is clear: the possibility of reverter takes effect in possession immediately and automatically upon the happening of the event named, whereas, on the happening of the event named in a common-law condition subsequent, the possessory estate does not vest immediately in the one having the right of entry for breach of condition. He must first elect to terminate the granted estate before a possessory estate vests in him." Simes & Smith, The Law of Future Interests § 282, p. 330.
[2] Thus, so far as the law of adverse possession be concerned, it is not conceptually logical for the grantee of a fee estate subject to a condition subsequent to acquire an indefeasible estate simply by remaining in possession of the property following breach of the condition. His continued possession and enjoyment of the property does not become adverse to any possessory estate of the grantor until the latter, or his heirs, elect to declare a forfeiture. Mills v. Pennington, 213 Ark. 43, 209 S.W. (2d) 281 (1948); Thompson v. Simpson, 128 N.Y. 270, 28 N.E. 627 (1891); New York v. Coney Island Fire Dept., 170 Misc. 787, 10 N.Y.S. (2d) 164 (1939), aff'd. 259 App. Div. 286, 18 N.Y.S. (2d) 923 (1940); Restatement, Property § 222 Comment g; Simes & Smith, The Law of Future Interests § 258, p. 309.
In the instant case, it is agreed that no election of forfeiture, on the part of the Rigneys or their heirs, was made prior to initiation of this suit. Accordingly, the estate held *792 by the Metropolitan Park District of Tacoma did not ripen into an indefeasible one by adverse possession.
[3] This is not to say, however, that the holder of a right of entry, following a continuing breach of condition, is entitled to endlessly sit by refusing to declare a forfeiture, and thus control the use of the property indefinitely. An appropriate rule to meet such a contingency, together with the reasons for the rule, is succinctly propounded in Simes & Smith, The Law of Future Interests § 258, p. 310, as follows:
"However, the mere fact that the statute of limitations begins to run in favor of the grantee on the grantor's election to forfeit and not on the grantee's breach is no argument for the proposition that the grantor's power to forfeit should last forever. Such a legal club over the grantee would be most undesirable from an economic standpoint, since it would tend to discourage any productive use of the land. From the standpoint of policy, all policy considerations which justify the imposition of statutes of limitation would justify limiting the time within which an election could be made after breach of condition. Courts are naturally reluctant to admit that mere inaction will eventually bar the grantor's power to forfeit, but it is submitted that the sound rule is as follows: The grantor has a reasonable time after breach within which to declare a forfeiture or to elect not to declare a forfeiture; if he fails to declare a forfeiture within that time, his power to do so has expired." (Italics ours.)
The underlying policy of the rule as stated has found varying expression in the following cases. Hannah v. Culpepper, 213 Ala. 319, 104 So. 751 (1925); Terry v. Taylor, 143 Ark. 208, 220 S.W. 42 (1920); Jeffries v. State, Use of Woodruff Cy., 216 Ark. 657, 226 S.W. (2d) 810 (1950); Goodman v. Southern Pac. Co., 143 Cal. App. (2d) 424, 299 P. (2d) 321 (1956); Hale v. Elkhorn Coal Corp., 206 Ky. 629, 268 S.W. 304 (1925); Robinson v. Cannon, 346 Mo. 1126, 145 S.W. (2d) 146 (1940).
The condition in this case has been in continuous breach since sometime prior to 1905. We cannot say that the delay in claiming a forfeiture has been either reasonable or *793 warranted. The time in which the election should have been made has long since past, and the condition has expired.
The decree quieting title in The Metropolitan Park District is affirmed.
DONWORTH, FINLEY, OTT, and HUNTER, JJ., concur.
April 21, 1965. Petition for rehearing denied.
NOTES
[*] Reported in 399 P. (2d) 516.