[No. 421-1. · Division One—Panel 2. November 8, 1971.]

ROBERT R. SHOEMAKER *et al.*, *Appellants*, v. WILLIAM A. SHAUG *et al.*, *Respondents*.

*William M. Robinson,* for appellants.

*Reed, McClure, Moceri & Thonn, Roy J. Moceri,* and *William R. Hickman,* for respondents.

JAMES, J.—On June 7, 1966, defendant Shaug leased premises to third-party defendant Schwenker "for the purpose of conducting thereon a tavern business." The lease is

for a term of 4 years and gives the lessee an option to renew for an additional 5 years. The lease provides that:

> Lessee shall not, without the written consent of the Lessor or Lessor's agents, let or sublet the whole or any part thereof, *nor assign this lease* or any part thereof *without the written consent of the Lessor*, or Lessor's agents. This lease shall not be assignable by operation of law. If consent is once given by the Lessor to the assignment of this lease, or any interest therein, Lessor shall not be barred from afterwards refusing to consent to any further assignment.

(Italics ours.) The lease further provides in paragraph 20:

> If any rents above reserved, or any part thereof, shall be and remain unpaid when the same shall become due, or *if Lessee shall violate* or default in *any of the covenants and agreements herein contained, then the Lessor may cancel this lease upon giving the notice required by law, and re-enter said premises,* . . .

(Italics ours.)

On November 28, 1966, plaintiff Shoemaker purchased the tavern from Schwenker for $45,000, and Schwenker assigned the lease to Shoemaker. Shaug gave his written consent to the assignment.

Soon after the purchase from Schwenker, Shoemaker discovered that he did not enjoy the tavern business. After some discussion, a bartender employed by Shoemaker agreed to purchase a one-half interest in the tavern and to assume the responsibility of management. Shoemaker and the bartender formed Albo Corporation to effect the purchase and sale. Shoemaker and the bartender planned to assign the lease to Albo Corporation, thus allowing Shoemaker to retain an investment in, but not requiring him to personally participate in the operation of the tavern.

Shoemaker requested Shaug's consent to the assignment of the lease to Albo Corporation, but Shaug refused. Nevertheless, Shoemaker assigned the lease to Albo Corporation and procured a tavern license in Albo Corporation's name. The sale of the one-half interest was frustrated, however, by the bartender's failure to pay the agreed upon

purchase price. Consequently, Shoemaker had the tavern license reissued to identify both himself and Albo Corporation as owners of the tavern.

On November 7, 1968, Shaug notified Shoemaker by letter that he had "just been advised that on October 20, 1967, you assigned your interest in [the] lease to Albo Corporation;" that such assignment was in violation of the lease because it was without his consent; and that as authorized by paragraph 20 of the lease, he "hereby terminates" the lease and "makes demand upon you to vacate the premises by November 30, 1968." Shaug thereafter refused to accept further rental payments.

Shoemaker and Albo Corporation initiated this action. They alleged that by accepting rental payments with the knowledge that the lease had been assigned to Albo, Shaug had waived his right to object to the assignment; and that he should be "estopped from asserting the assignment as a breach of the lease." The rental payments accruing subsequent to the notice of forfeiture were paid into the registry of the court.

As an alternative basis for relief, in the event that the trial court rejected the estoppel theory, Shoemaker asked the court to find that his assignment to Albo was ineffective because Albo's incorporation was so incomplete that Albo never became an entity capable of accepting an assignment.

In his trial brief, Shoemaker makes a final plea that if "the court determines that the covenant against assignment has been violated," reassignment from Albo to himself be permitted.

Shaug answered and denied that he accepted rental payments with knowledge of the assignment. He alleged that the assignment was without his consent, thereby constituting a breach of covenant which gave him the option to cancel the lease. Shaug joined Schwenker as a defendant in a third-party complaint and prayed for a judgment declaring that the lease is no longer of any force or effect and that he is entitled to immediate possession.

After taking the case under advisement, the trial judge informed counsel by letter that he had struggled to find some way in which he could make a finding to avoid the forfeiture of the lease, but was unable to do so. The judgment from which Shoemaker appeals decrees a forfeiture and terminates the lease; orders the clerk of the court to forthwith issue a "writ of assistance" directing the sheriff to eject Shoemaker, Schwenker, and Albo; and authorizes Shoemaker to recover the money which he had paid into the registry of the court.

Substantial evidence supports the trial judge's finding 8 that "the Albo Corporation has been and now is a duly authorized corporation, organized under the laws of the State of Washington; . . ." and "[t]hat since October 20, 1967, the interest of the lessee under said lease of June 7, 1966, has been vested in the Albo Corporation." Finding 9. Although not specifically found as a fact, the implied finding that Shaug's acceptance of rental payments was without knowledge of the assignment is supported by substantial evidence.

We have concluded, nevertheless, that the lease should not be forfeited.

It might be persuasively argued that a provision of a lease which denies the lessee the right to assign without his lessor's written consent merely diminishes the leasehold estate. An assignment without consent is voidable at the option of a lessor. *Morrison v. Nelson*, 38 Wn.2d 649, 231 P.2d 335 (1951). It would seem to be a necessary corollary, therefore, that if a lessor voids an assignment by withholding his consent, a lessee's attempt to assign becomes a nullity and should not be treated as a breach of a covenant.

Historically, however, provisions against assignment have been treated as covenants. 49 Am. Jur. 2d *Landlord and Tenant* § 408 (1970). And forfeiture for breach by assignment has been judicially approved if expressly authorized by the terms of the lease. *Chopot v. Foster*, 51 Wn.2d 406, 318 P.2d 976 (1957); *Boyd v. North*, 114 Wash. 540, 195 P. 1011 (1921).

▆▆▆ But covenants against assignment constitute a restraint against alienation and are not favored in the law. 49 Am. Jur. 2d *Landlord and Tenant* § 405 (1970); G. Thompson, Commentaries on the Modern Law of Real Property § 1211 (J. Grimes 1959 repl.); *Income Props. Inv. Corp. v. Trefethen,* 155 Wash. 493, 284 P. 782 (1930). And even more fundamental is equity's abhorrence of forfeiture.

It is elementary law in this jurisdiction that forfeitures are not favored and never enforced in equity unless the right thereto is so clear as to permit no denial.

*John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 228, 455 P.2d 946 (1969).

Equity's goal is to always do substantial justice to both contracting parties when a forfeiture is sought. *Dill v. Zielke,* 26 Wn.2d 246, 173 P.2d 977 (1946). In seeking to do substantial justice, "the factor which has always appeared most important to the court [is] a substantial financial loss to the buyer if the contract is forfeited, with no corresponding loss to the seller if a period of grace is allowed." *State ex rel. Foley v. Superior Court,* 57 Wn.2d 571, 574, 358 P.2d 550 (1961). *See also John R. Hansen, Inc. v. Pacific Int'l Corp., supra.*

Shoemaker's financial loss if the lease is forfeited would be substantial. On the other hand, Shaug would lose nothing if the attempted assignment is nullified. He retains all that he bargained for—a tenant (Shoemaker) who is not in default.

Had Shaug elected to obtain possession of the tavern premises pursuant to Washington's unlawful detainer statute, RCW 59.12, he would have been required to first give notice "requiring in the *alternative* the *performance* of [the] covenant [the covenant not to assign] *or* the *surrender* of the property, . . ." (Italics ours.) RCW 59.12.030(4). Shaug's "notice" of forfeiture offered no opportunity to remedy the claimed breach of covenant.

Equity's abhorrence of forfeiture is mirrored in the unlawful detainer code.

The court may relieve a tenant against a forfeiture of a lease and restore him to his former estate, as in other cases provided by law, where application for such relief is made within thirty days after the forfeiture is declared by the judgment of the court, as provided in this chapter.

RCW 59.12.190.

Since Shaug did not elect to pursue a summary remedy by claiming unlawful detainer, the relief against forfeiture provided by RCW 59.12.190 is not available to Shoemaker. *See Petsch v. Willman,* 29 Wn.2d 136, 185 P.2d 992 (1947). However, "[t]here is no question but that equity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable." *Thisius v. Sealander,* 26 Wn.2d 810, 818, 175 P.2d 619 (1946).

It is well settled that, when the conditions and circumstances are such as to warrant the interference of equity, equity will assume jurisdiction for all purposes and give such relief as may be required.

*Income Props. Inv. Corp. v. Trefethen, supra* at 506.

Shoemaker's evidence established that prior to bringing this action he had, by formal agreement, become the sole owner of Albo Corporation and was therefore in a position to reassign the lease from Albo to himself.

Clearly this is a case where equity should "step in" to prevent an inequitable forfeiture. As is pointed out in *Coulos v. Desimone,* 34 Wn.2d 87, 95, 208 P.2d 105 (1949),

[i]t has been held that such a covenant is not broken where the assignment, executed without the lessor's consent, is made by an assignee back to the original lessee. The reason therefor is stated in *McCormick v. Stowell,* 138 Mass. 431, as follows:

"The covenant by the lessee, that he or others having his estate in the premises will not assign this lease without the written consent of the lessor, does not by its true construction extend so far as to prohibit a reassignment to the lessee himself without a new and special consent of the lessor. *By the lease itself, the lessor consents to take the lessee as his tenant for the full term mentioned in the lease.* This consent is available for any reassign-

ment to the original lessee during the term. There was therefore no breach of the covenant. The statement in the bill of exceptions, that the reassignment has never been consented to, means only that no special consent has been given; and this was unnecessary." (Italics ours.)

The judgment is reversed and the case is remanded for the entry of a decree declaring the attempted assignment to Albo Corporation to be void; that the lease is not terminated; and that Shaug may withdraw the funds paid as rental from the registry of the court.

FARRIS, A.C.J., and SWANSON, J., concur.