[No. 5569–1.   Division One.   February 20, 1979.]

ROBERT A. SETHRE, ET AL, *Respondents,* v. WASHINGTON
EDUCATION ASSOCIATION, ET AL, *Appellants.*

*MacDonald, Hoague & Bayless, Harold H. Green,* and *Robert C. Randolph,* for appellants.

*Perkins, Coie, Stone, Olsen & Williams, J. David Andrews, Bruce D. Corker,* and *Otto G. Klein III,* for respondents.

WILLIAMS, J.—Robert E. Sethre and eight others brought this action against the Washington Education Association and others for a declaration that they are entitled to the same retirement benefits from the Education Association as are provided by statute to members of the Washington State Teachers' Retirement System. The trial court granted the relief sought. We affirm.

The facts essential to be stated are these: Washington Education Association is a nonprofit corporation organized and existing to advance the teaching profession in the state of Washington. Sethre and the others are all former staff employees of the Association. Each had terminated employment with the Association prior to reaching retirement age. Upon termination, each exercised the option of leaving accumulated pension contributions in the Association's pension plan.

Shortly after the Washington State Teachers' Retirement System was established by the legislature in 1937, the Association adopted a policy of maintaining a retirement program for its staff employees which would afford the same or similar benefits as received by participants in the state teachers' retirement system. This policy was reflected in the preambles to the 1941 retirement agreement and its successor agreements up to 1973:

*The 1941 Retirement Agreement:*
The purpose of this agreement between the Washington Education Association, a Washington corporation, and Jessie A. Campbell is to establish for the employees of said corporation a retirement annuity plan comparable to that provided by Chapter 221 of the Session Laws of 1937, as amended by Chapter 86 of the Session Laws of 1939 and by Chapter 97 of the Session Laws of 1941, for public school employees.

*The 1957 Pension Trust Agreement:*
The benefits provided employees hereunder shall parallel as nearly as is practicable and legal the various benefits provided Washington State teachers under the Washington State Teachers Retirement System. The same actuarial and mortality tables will be used in the computations and assumptions hereunder and are attached hereto and made a part of this Agreement.

*The 1963 WEA Plan:*
So far as practicable, the benefits provided Participants under this Plan shall parallel the various benefits provided Washington State teachers under the Washington State Teachers' Retirement System.

*The 1969 WEA Plan:*
On September 1, 1963, the WEA adopted a revised pension plan, designated the "Staff Retirement Plan of the Washington Education Association," providing for increased benefits for Participants and their beneficiaries paralleling the various benefits provided by the Washington State Teachers' Retirement System.

. . . The revised Plan shall continue to parallel, so far as practicable, existing provisions of the Washington State Teachers' Retirement System.

In 1973 when the pension benefits in the Washington State Teachers' Retirement System were doubled (from 1 percent of the average earnable compensation to 2 percent), the policy statement was changed to read as follows:

The basic purposes of such revision shall be to bring the Staff Retirement Plan in line with recently enacted changes in the Washington State Teachers' Retirement System and to provide for funding on a pooled basis rather than through individually–directed investment accounts.

While the Staff Retirement Plan is patterned after the Washington State Teachers' Retirement System, its provisions are not designed or intended to parallel in every respect the provisions of the WSTRS; nor is there any intention or commitment on the part of the WEA or any other participating employer to revise the Plan by reason of any future changes or amendments to the WSTRS.

In each case the successive agreements were entered into shortly after a change in the pension statute was made by the legislature. Rather than incorporate the statute and the occasional amendments to it by reference, the agreements set out the substance of the statute as amended as the operative terms of the agreement without mention of the statute.

Following the adoption of the 1973 agreement, the Association told Sethre and the others that their retirement benefits would be calculated in accordance with the benefit formula in effect at the dates of their terminations (1 percent) rather than in accordance with the benefit formula in effect at the date of retirement (2 percent). This was in accord with the operative provisions of the agreements. Sethre and the others believe that they should be paid under the 2 percent formula because of the language of the preambles to the agreements stating that the benefits paid to staff retirees shall parallel those paid to teachers in the state's system. The Association contends that the trial court erred in denying its motion for summary judgment and in admitting parol evidence to vary the unambiguous terms of the operative provisions of the agreements. The

question, then, is whether the established policy of the Association to keep pace with the public retirement system as expressed in the preambles is a binding term of the pension agreements overriding the precise terms in the operative parts of those agreements.

■ A private pension plan creates a contractual obligation between employer and employee. The rights and obligations of the parties are measured by the terms of the contract under the ordinary rules of contract construction. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 916, 468 P.2d 666 (1970).

■■ Sethre and the others argue that the agreements are ambiguous because the intent expressed in the preambles is different from that shown in the operative portions. The rule is that "recitals may be resorted to in aid of construction only where there is an ambiguity in the operative portion of the agreement." *Brackett v. Schafer,* 41 Wn.2d 828, 834, 252 P.2d 294 (1953); *Franklin v. Northern Life Ins. Co.,* 4 Wn.2d 541, 104 P.2d 310 (1940); *First Nat'l Bank & Trust Co. v. United States Trust Co.,* 184 Wash. 212, 50 P.2d 904 (1935). But this rule does not apply when the language of the recital or preamble states a promise.

> The essential feature of a contract is the promise, and whenever the court can collect from the instrument an agreement to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument.

*First Nat'l Bank & Trust Co. v. United States Trust Co., supra* at 219. *See also Hunt v. United Bank & Trust Co.,* 210 Cal. 108, 291 P. 184 (1930); *Becker v. Kelsey,* 157 A. 177 (N.J. 1931). That happened in this case. The employee is assured in the opening paragraph of each agreement, except the 1973 one, that his pension would be substantially the same as arranged by the state for teachers in the public schools. It is only later on in the contract that contrary provisions appear. Hence, there is an ambiguity, the trial court was correct in considering other evidence, and that evidence substantially supports the court's findings.

■ The next question is whether the trial court was correct in awarding attorneys' fees pursuant to section 1132 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 (1975). That section, which in subsection (a)(1)(B) authorizes a pension beneficiary or participant to bring a civil cause of action:

to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

permits the court, in its discretion, to award reasonable attorneys' fees and costs of the action to either party. 29 U.S.C. § 1132(g). Because section 1132 became effective on January 1, 1975, and has no retroactive effect, it has no application to causes of action accruing before that date. 29 U.S.C. § 1144 (1975); *Martin v. Bankers Trust Co.,* 565 F.2d 1276 (4th Cir. 1977).

■ The Association argues that the claims accrued in February 1974 when the 1973 agreement was approved, omitting Sethre and the others from the increase to 2 percent, even though they had not yet reached retirement age. In assessing whether a cause of action exists, it is generally accepted that "a right of action upon a contract does not accrue . . . until the agreement is to be performed or payment thereunder becomes due by its terms." 51 Am. Jur. 2d *Limitation of Action* § 126, at 695 (1970). Federal courts have held that claims for pension benefits which first become due after the effective date of the Retirement Security Act are subject to it. *See, e.g., Riley v. Meba Pension Trust,* 570 F.2d 406 (2d Cir. 1977); *Keller v. Graphic Systems of Akron, Inc., Employees Profitsharing Plan,* 422 F. Supp. 1005 (N.D. Ohio 1976); *Morgan v. Laborers Pension Trust Fund,* 433 F. Supp. 518 (N.D. Cal. 1977).

Substantial problems would result if the date of the original wrong rather than the date pension benefits were denied was the time when the cause of action accrued. As stated in *Morgan* at page 522 n.5:

First, such a rule would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to be constantly vigilant against possible abuses or errors by their pension fund years before they even apply for benefits, or lose the chance to vindicate their rights. . . .

Requiring piecemeal challenges before an actual denial has occurred would also result in a great waste of judicial resources. Plaintiffs would file separate actions each time an alleged wrong occurred, rather than consolidating all claims in a single suit after their pensions were denied. . . .

■ The doctrine of anticipatory breach of contract does not apply because Sethre and the others, by working for the Association over a period of years, had fulfilled all of their obligations under the pension agreements. An anticipatory breach cannot occur where one party has performed all of his duties under the contract. 11 S. Williston, *Contracts* § 1326, at 146 (3d ed. 1968). Further, until the applications of Sethre and the others were actually denied, the Association could, at any time, reverse its stated position and award pensions based on the 2 percent formula. The Association is not correct in asserting that Sethre and the others had a breach of contract action prior to the effective date of section 1132 of the act.

Finally, the Association contends that even if the cause of action arose after the effective date of the Retirement Security Act, the trial court did not have jurisdiction to award attorneys' fees because it did not apply federal law as required by section 1144 of the act. Jurisdiction is addressed in an entirely different section of the statute, section 1132(e) entitled "Jurisdiction." As stated by the Supreme Court in *Fauntleroy v. Lum,* 210 U.S. 230, 235, 52 L. Ed. 1039, 28 S. Ct. 641 (1907):

Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction and deals with a matter upon which that court must pass, we naturally are slow to read

ambiguous words, as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule by which the court should decide.

■ Here, common sense, in addition to the statutory structure, leads to the conclusion that section 1144 is not jurisdictional. Because this issue is neither jurisdictional nor constitutional, the Association's failure to raise the precise point precludes our consideration of it. *State v. Reano*, 67 Wn.2d 768, 409 P.2d 853 (1966).

■ Alternatively, the Association argues that even if the trial court had jurisdiction of the claim under the Retirement Security Act, it nevertheless erred in determining the amount of attorneys' fees and taxable costs. The trial court determined the amount of fees and costs by applying a formula developed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). That formula offers a concrete and reasonable set of factors to be applied in determining an award of fees. A trial court's determination of reasonable attorneys' fees will not be overturned unless there is a manifest abuse of discretion. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 557 P.2d 342 (1976). We find no abuse of discretion in either the manner in which the formula was applied or in the amount awarded.

■ As to the trial court's award of costs, we do agree with the Association that some items of cost were improperly awarded. The Retirement Security Act permits an award of costs, but does not specify the items to be included in the award. Section 1132(g) (1975). When no provision has been made by Congress in relation to any particular item, the award of costs should be determined by state law. *See Ex parte Peterson*, 253 U.S. 300, 64 L. Ed. 919, 40 S. Ct. 543 (1920). Thus, the court's authority to award costs was limited by RCW 4.84.

The judgment for costs is reversed and remanded to the trial court for a determination of costs as provided by RCW 4.84. Sethre and the others are also entitled to an award of attorneys' fees and costs for this appeal which will also be

determined by the trial court on remand. In all other respects, the judgment is affirmed.

JAMES and RINGOLD, JJ., concur.

Reconsideration denied April 30, 1979.

Review denied by Supreme Court August 22, 1979.