[No. 6132-5-II.   Division Two.   October 17, 1983.]

PAUL THOMAS, ET AL, *Appellants*, v. RAYMOND
R. NELSON, ET AL, *Respondents*.

*Joel Penoyar,* for appellants.

*Richard Goodwin,* for respondents.

REED, J.—This is a dispute over the ownership of real property bordering on Willapa Bay in Pacific County, Washington. There is no factual issue. Paul and Virginia Thomas purchased a lot in 1973 from Robert W. and Lois L. Sherlock (not parties to this suit), receiving a fulfillment deed with the following description:

Commencing at the northwest corner of Block 5 of Hollywood Addition to Tokes Point, according to the plat

thereof on file in the office of the Auditor of Pacific County, Washington; thence north 59° 40' west 330 feet to the true point of beginning; thence south 30° 20' west 600 feet more or less to the meander line of Willapa Bay; thence northwesterly along said meander line 125 feet more or less; thence north 30° 20' east to an intersection with the southerly right–of–way line of the Aberdeen–Tokeland Road, now Secondary State Highway No. 13–A; thence southeasterly along said right–of–way line 125 feet to the true point of beginning; Situate in Pacific County, State of Washington. Subject to reservations and easements, and restrictions of record.

The disputed area is the land composing the southerly extension of this lot from the meander line to the water's edge, the line of mean high tide of the Pacific Ocean.[1] The Thomases' survey in connection with this lawsuit places the meander line 608 feet from the road. There is approximately 1,100 feet of land between the meander line as surveyed and the line of mean high tide.

Raymond and Virginia M. Nelson claim the disputed area through a separate chain of title. They presently own the property to the east of Thomases' lot and the tidelands abutting it. At one time they also owned much of the property to the west, now platted as Nelsons' Tracts.

The relevant chain of title to the Thomases' lot commences in 1936 when the lot was first conveyed out of a larger piece of property owned by Maud E. Kindred. The legal description in the Kindred deed to Harold Stouffer contains one sentence in addition to the above quoted metes and bounds description.

It is further understood and agreed that this tract of land is to be 125 feet in width when run on an angle of N.59°40' West and have the said County Road as the North boundary and the meander line as the South boundary.

Stouffer deeded the property in 1945 to Nelson Crab & Oyster Co. (relatives of Nelsons), who deeded it in 1948 to

---

[1] By two deeds not in dispute, the Thomases have conveyed away the northerly 500 feet of the property bordering on the road.

Mr. and Mrs. Sherlock. Both deeds used the 2–sentence description of the Kindred deed.

When Mr. and Mrs. Sherlock sold to Thomases neither the real estate contract nor the fulfillment deed contained the second sentence of the Kindred deed.

The Thomases sued to quiet title to the disputed area in themselves. Nelsons did not counterclaim to quiet title. The trial court granted Nelsons' motion for summary judgment of dismissal and denied Thomases' cross motion for summary judgment. Thomases assign error to both these rulings.

The only issue presented is whether the evidence before the court on summary judgment provides "clear indication" that "meander line" in the Kindred deed means the actual meander line as established by government survey in 1859, and not the line of mean high tide.

Meander lines are the waterside boundaries of government lots. They are a series of short, straight lines which approximate the curved edge of a body of water. They were run by the United States government for the purpose of fixing the acreage within the government lot so that a price could be set. F. Clark, *Surveying and Boundaries* § 238 (3d ed. 1959). Problems arise when, due to accretion or reliction, the meander line no longer lies along the water's edge.

▮▮ The rule in Washington with respect to the use of a meander line as a call in a legal description is clear. A deed which uses the meander line as one of the boundaries conveys to the water, unless there is clear indication that the parties to the deed intended that the meander line should be the actual boundary. *Harris v. Swart Mortgage Co.,* 41 Wn.2d 354, 249 P.2d 403 (1952); *Hirt v. Entus,* 37 Wn.2d 418, 224 P.2d 620 (1950); *Myers v. Harris,* 10 Wn. App. 706, 519 P.2d 1307 (1974); *Vavrek v. Parks,* 6 Wn. App. 684, 495 P.2d 1051 (1972).[2] The deed which we must look to is the deed from Kindred to Stouffer in 1936.

---

[2]In *Myers v. Harris, supra,* the standard of proof is stated as clear and convincing. The court cites no authority for this greater burden.

Appellants could not receive any more property than their predecessors had to convey. Evidence extrinsic to the deed may be considered to ascertain the real intent of the parties because we are not seeking to contradict the deed but to determine what property was meant to be conveyed by the legal description used. *Vavrek v. Parks, supra.*

■ This case having been decided by summary judgment, review is limited to determining whether there exists a genuine issue of material fact and, if not, whether Nelsons were entitled to judgment as a matter of law. *Capitol Hill Methodist Church v. Seattle,* 52 Wn.2d 359, 324 P.2d 1113 (1958); *Rainier Nat'l Bank v. Inland Mach. Co.,* 29 Wn. App. 725, 631 P.2d 389 (1981). There are no factual issues. The facts were presented in uncontested affidavits. Other indications of intent argued came from construction of the deeds themselves. Construction of deeds is a matter of law for the court. *State Bank v. Phillips,* 11 Wn.2d 483, 119 P.2d 664 (1941).

After reviewing the deeds and the affidavits presented, we agree with the trial court. The meander line clearly was intended to be the actual waterside boundary of Thomases' lot.

The salient evidence comes from the language of the Kindred deed itself. The call in the legal description of that deed is not simply from the road "to the meander line," but adds "about 600 feet" to the meander line. The meander line is actually 608 feet from the road. Ray Nelson testified by affidavit that there are 50– to 100–year–old trees growing on the land beyond the meander line. He also stated that the land mass has been the same since he moved to Willapa Bay in the late 1930's. It can be inferred that some established growth was present beyond the meander line in 1936 when the Kindred deed was granted. The language fixing the meander line at "about 600 feet" from the road, augmented by the physical evidence, is clear indication that the parties to the Kindred deed meant to fix the meander line as the actual boundary.

Thomases argue that Nelsons' interpretation of the deeds

in the Thomases' chain of title is inconsistent. They claim that the Nelsons interpret the deed to Nelson Crab & Oyster Co. as conveying to the water's edge while their deed to Sherlock with the same legal description does not. This is not correct. Nelsons did not trace their claim to the land from the deed to Nelson Crab & Oyster Co. Their claim arises from a separate chain of conveyances. In that chain Nelsons received the land to the east of the Thomases' lot and the tidelands as well as other property now platted as Nelsons' Tracts.

Both parties presented affidavits stating that they had paid the taxes on the disputed area. While evidence on the payment of taxes was probative in the particular facts of *Vavrek v. Parks, supra,* it is not probative here. It is merely consistent with each party's claim of ownership.

The judgment is affirmed.

PETRICH, C.J., and WORSWICK, J., concur.