[No. 53733–0. En Banc. December 15, 1988.]

JACK M. MARTIN, ET AL, *Respondents,* v. THE CITY OF SEATTLE, ET AL, *Petitioners.*

728

*Douglas N. Jewett, City Attorney,* and *Gordon F. Cran-dall, Senior Assistant,* for petitioners.

*Waitt, Johnson & Martens,* by *Richard L. Martens,* for respondents.

PEARSON, C.J.—Plaintiffs brought this action to enforce conditions subsequent in a 1908 deed quitclaiming land to the City of Seattle (hereafter the City). The primary issue presented in this case is whether the acceptance by the City of a conditional transfer from the State constituted a breach of the condition found in the deed from the grantor to the City. The trial court and the Court of Appeals held that the City breached the condition subsequent and awarded damages to the plaintiffs. The City appeals contending the plaintiffs can no longer enforce the conditions, and that the City's use of the deed property does not constitute a taking. We reverse.

In 1883, the United States government issued a land patent to Charles Waters for property located in Seattle on the shores of Lake Washington. This property was subsequently purchased by C.B. Dodge Company (hereafter Dodge).

In 1908, Dodge quitclaimed a strip of the property to the City for the purpose of constructing Lake Washington Boulevard. Dodge also conveyed to the City "any and all rights which the grantor may have to acquire or purchase the shorelands of Lake Washington in front of the described property".

The deed included the following conditions:

1. That the grantor reserves the right, for itself, its successors and assigns, upon theshores [*sic*] of Lake Washington in front of the above described property to construct and maintain a private boat–house . . . said boat–house to occupy not to exceed twenty–five (25) feet frontage along the shore of said Lake, and said boat–house to be for the personal use of C.B. Dodge and his family, or such other person or persons as shall hereafter own, or as a tenant or licensee occupy any part of block two (2) Maynard's Lake Washington Addition to the City

of Seattle . . . and that the said grantee shall at all times permit the said construction, maintenance and use of the said boat–house and acquire and keep as its property such shore land as shall be necessary for said purpose.

The deed provided that the conditions could be enforced through a power of termination, as follows:

And the party of the first part hereby reserves to itself and to its successors and assigns forever the right, in case of the breach of the foregoing conditions, or any of them, whether one or more, to re–enter the said premises and in case of said re–entry the said party of the first part, its successors or assigns, shall be revested with its former estate therein as though this conveyance had never been made, and no failure to enter for the breach of the said conditions, or any of them shall be held or construed to be a waiver of the right to so enter for such or any other or subsequent breach.

In 1913, the City acquired the shorelands in front of the Dodge property from the State pursuant to the Laws of 1913, ch. 183, which provided that the shorelands are

hereby reserved for public uses and are hereby granted and donated to the city of Seattle for public park, parkway and boulevard purposes, and as a part of its public park, parkway and boulevard system and any diversion or attempted diversion of such lands so donated from such purposes shall cause the title to said lands to revert to the state.

In 1916, construction of the Hiram Chittenden Locks resulted in the lowering of Lake Washington by approximately 9 feet. Consequently, the shoreline of Lake Washington moved from 90 feet to 140 feet east of its former location. Title to the uncovered land remained in the City.

Between 1908 and 1983 neither Dodge nor its successors in interest made any demand upon the City for permission to build a boathouse. In July 1983, plaintiffs notified the City of their desire to build a boathouse pursuant to the conditions set forth in the 1908 deed. The City refused permission, and in September 1983, the plaintiffs informed the City of their election to reenter the premises and to declare that the property had been reverted in its entirety.

In December 1983, the plaintiffs commenced this action for declaratory relief and damages.

The trial court interpreted the conditions in the 1908 deed to be valid conditions subsequent. The court held that the City had not breached the condition in 1913 when it acquired its title to the shoreland from the State; rather, the City had breached the conditions subsequent in 1983 when it refused to allow the plaintiffs to build a boathouse. The trial court awarded the plaintiffs $50,000 in damages. The Court of Appeals agreed with the trial court and also held that the City's refusal to grant the plaintiffs permission to build a boathouse constituted an unconstitutional taking.

The questions necessary for resolution are: (1) what were the conditions contained in the 1908 deed; (2) were such conditions valid; (3) were any breached; (4) when did such a breach occur; and (5) was the grantor's right of entry/power of termination (hereinafter power of termination) exercised within a reasonable time after a breach occurred?

The conditions in the deed were that the City would permit the construction of a boathouse on land in front of the deeded strip, and that the City would acquire and keep such land as necessary for that purpose. On their face such conditions appear valid. The deed purported to transfer to the City "any and all rights which the grantor may have to acquire or purchase the shore lands of Lake Washington *in front of* said described property." (Italics ours.) It appears from such language that the parties to the deed may have been unclear as to what rights an upland owner would have to purchase newly uncovered shorelands. Although the trial court made no findings of fact and conclusions of law on this issue, the undisputed evidence at trial indicates there were statutory preference rights for upland property owners to acquire new shorelands, but those preference rights were only exercisable *if* the State platted and offered for sale the shorelands of navigable bodies of water. The unrefuted evidence indicates the State never offered the newly uncovered shorelands of Lake Washington for private sale, but instead

the State donated them to the City in 1913. This would mean the shoreland upon which the contemplated boathouse was to be constructed never was owned by Dodge, nor would it have had rights to purchase such shorelands. The condition subsequent in the deed therefore required the City to acquire *other* land than was the subject of the deed and allow construction on that newly acquired property.

As a matter of public policy, a condition subsequent in a deed involving one parcel of land may not place restrictions on another parcel of land. We therefore hold that the parties to the deed had no right to encumber a piece of property which neither party owned at the time of the deed. However, even assuming the validity of the conditions subsequent in the deed which would require acquisition of shorelands by the City and permission to construct a boathouse on such land, the first of these conditions was breached in 1913, and the power of termination was not exercised within a reasonable time after that breach.

A grantor of a power of termination has only a reasonable time *after breach* within which to declare a forfeiture or to elect not to declare a forfeiture. If a forfeiture is not declared within a reasonable time, the power of termination expires. *Metropolitan Park Dist. v. Rigney,* 65 Wn.2d 788, 399 P.2d 516 (1965). The most critical issue of this case is therefore whether the condition subsequent requiring the City to acquire and keep such property as was necessary to allow construction of a boathouse was breached in 1913 when the City accepted the new shoreland from the State, with the condition that it would revert to the State if used for other than park purposes.

The construction of deeds is a matter of law for the courts. *Thompson v. Schlittenhart,* 47 Wn. App. 209, 211, 734 P.2d 48, *review denied,* 108 Wn.2d 1019 (1987); *Donald v. Vancouver,* 43 Wn. App. 880, 883, 719 P.2d 966 (1986); *Thomas v. Nelson,* 35 Wn. App. 868, 871, 670 P.2d 682 (1983). A conclusion of law described as a finding of fact is reviewable as a conclusion of law. *Willener v. Sweeting,* 107

Wn.2d 388, 394, 730 P.2d 45 (1986); *Woodruff v. McClellan,* 95 Wn.2d 394, 395, 622 P.2d 1268 (1980); *Barnett v. Buchan Baking Co.,* 45 Wn. App. 152, 156, 724 P.2d 1077 (1986), *aff'd,* 108 Wn.2d 405, 738 P.2d 1056 (1987). Whether the City's acquisition of the newly uncovered shorelands from the State (with the condition the lands only be used for park purposes) constitutes a breach of the condition subsequent in the deed from Dodge to the City is a question of law. The existence of and the language used in both transfers is undisputed and the issue then becomes whether the one transfer constitutes a breach to a condition subsequent in the prior transfer.

The challenge made to the trial court's finding concerns the *legal effect* of actions taken by the parties. Such a question is properly reviewable by this court. *See Barnett v. Buchan Baking Co., supra* at 156. The issue of whether the condition to acquire land for boathouse purposes was breached by the character of the City's acquisition in 1913 is not an issue of fact but an issue of the legal ramification of undisputed facts.

The 1908 deed provided that the "grantee . . . permit the . . . construction . . . of the said boat–house and acquire and keep as its property such shore land as shall be *necessary for said purpose.*" (Italics ours.) In 1913 the State, by public statute, gave title to the bed of Lake Washington and shorelands (including the shorelands in front of the land conveyed from Dodge to the City) to the City of Seattle for *use as a public park* and provided that the land would revert to the State if used otherwise. Laws of 1913, ch. 183. The deed reserved the right to build "in front of" property conveyed. The trial court's finding of fact 10 found that both the City and Dodge intended the City to acquire land to accommodate construction of a boathouse. The City breached that condition in 1913 when it accepted the land from the State in such a manner that it was absolutely prohibited from granting permission to a private party to build for personal use. The Court of Appeals stated that the State (if asked) might have granted

permission to build a boathouse on the lakeshore in spite of its right to retake the land, if used for other than park purposes. *Martin v. Seattle,* 46 Wn. App. 1, 5, 728 P.2d 1091 (1986). It is, however, not dispositive of the issue to recognize that the City might have sought permission from the State to violate the park–purpose condition. A grantor who is a holder of a power of termination can always ask the grantee after a breach of a condition to rectify such breach; however, such possibility does not mean no breach has occurred.

Given that the City's acceptance of the newly uncovered shorelands for park purposes breached its duty to acquire land to permit private construction of a boathouse, the issue arises whether the grantor (or his successors) was on notice of such a breach.

Powers of termination are reversionary and therefore not subject to the rule against perpetuities, which means they can be "extremely troublesome and clutter up titles with outmoded restraints, or with factors that have nothing to do with land use." Washington State Bar Ass'n, *Real Property Deskbook* § 6.3 (1979). In addition to clouding title for decades, if not indefinitely, powers of termination are disfavored because they involve a potential forfeiture of the transferred interest. Restatement of Property § 155, comment *b* (1936). In a different context the Washington Court of Appeals has recognized that "[i]t is elementary law in this jurisdiction that forfeitures are not favored and never enforced in equity unless the right thereto is so clear as to permit no denial." *Shoemaker v. Shaug,* 5 Wn. App. 700, 704, 490 P.2d 439 (1971) (quoting *John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 228, 455 P.2d 946 (1969)). Given that powers of termination can result in harsh forfeitures and can operate to cloud title indefinitely, some diligence on the part of holders of such future interests to determine if a grantee has breached a condition subsequent should be required. However, actual notice of breach should not be required; rather, we hold that if a holder of a power of termination knew or should

with due diligence have known a breach had occurred, he has a reasonable time after a breach to reenter and declare a forfeiture of the estate granted. Here, the 1913 breach was or should have been apparent to the grantor because the newly uncovered shorelands were given by the State to the City by public law. *See* Laws of 1913, ch. 183.

> All persons are charged with knowledge of the provisions of statutes and must take notice thereof. . . . All persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes.

58 Am. Jur. 2d *Notice* § 21 (1971). In addition, the grantor and his successors were owners of adjacent waterview property and presumably were aware that the new shorelands were being utilized as a public park.

Therefore, upon the State's transfer of the shorelands, the City failed to meet the condition that it keep and acquire such land as was necessary for it to permit the construction of a boathouse. Since this breach occurred in 1913, the grantor had a reasonable amount of time after 1913 to declare a forfeiture and reenter the deeded property. *Metropolitan Park Dist. v. Rigney*, 65 Wn.2d 788, 399 P.2d 516 (1965). Since no action was taken by the grantor or his successor until 1983, the power of termination had long since expired.

Therefore, we reverse and the suit is dismissed.

UTTER, BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., and CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.

CALLOW, J. (dissenting)—We are asked to enforce a condition subsequent in a deed to property that is presently part of Lake Washington Boulevard. The condition subsequent requires the City either to permit the erection of a boathouse on adjacent shoreland or to return the property. The City agreed to accept the restrictions in this deed when it built the boulevard in order to avoid paying just compensation for the property.

The City now wants to avoid performing either of its obligations. It wants something for nothing—because time has passed. It essentially asks this court to sanction its uncompensated taking of the boulevard property. Because it has offered no principled basis to justify its request, I would permit the landowners to assert their rights under the deed. I dissent.

The majority adopts two alternative theories under which it would deny the landowners their rights. First, the majority declares that "[a]s a matter of public policy, a condition subsequent in a deed involving one parcel of land may not place restrictions on another parcel of land." Majority, at 732. However, the majority does not support this broad assertion either by citation to authority or by analysis.

The majority's first alternative holding is inappropriate. The City never raised this issue. The landowners have never had an opportunity to respond to it. We should not rule on it. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 29, 593 P.2d 156 (1979). It is unfair to the plaintiffs and likely to result in bad law. We have wisely avoided such conduct in the past.

The majority's consideration of this theory does not follow from the facts. Neither parcel involved in this case is of marketable size. The City has incorporated one into Lake Washington Boulevard. The State has dedicated the other for use as a public park. These facts simply do not warrant the articulation of a broad new public policy rule intended to protect the free alienability of property.

The majority's first holding is also erroneous. The condition subsequent in the deed to the boulevard property did not place any legal restrictions on the shoreland property. The City could have disposed of the property at any time, had it ever received clear title, without any restriction or encumbrance in favor of the landowners. The landowners simply have never had any legal interest in the shoreland property. Compare *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 71, 622 P.2d 367 (1980). They have only the right to

demand that the City *either* give them an easement interest in the shoreland property *or* restore them to the status quo before the transfer, by restoring the boulevard property.

Therefore, the majority must mean that public policy precludes this condition because its practical effect is to discourage alienability. However, *all* conditions subsequent (like all future interests) discourage alienability. "Indirect restraints on alienation arise on the creation of future interests and of trusts." "[T]he very fact that ownership in the thing in question has been divided up into present and future interests may constitute an indirect restraint on alienation." L. Simes & A. Smith, *Future Interests* §§ 1112, 1113 (2d ed. 1956).

Given this similarity, the majority must justify singling out this condition. How is *this* condition excessive? How does it interfere with alienability *more* than any other condition? The majority does not answer these questions. Instead, it avoids them by devoting most of its discussion to an alternative basis for resolving the case.

The majority's second alternative holding states that the "grantor of a power of termination has only a reasonable time *after breach* within which to declare a forfeiture". Majority, at 732. In order to establish this proposition, the majority determines that the City breached the condition in 1913, by accepting restricted title to the shoreland property from the State. Majority, at 733.

The City did not breach in 1913. Once one party has fully performed its obligations under an agreement the other party cannot anticipatorily breach. 11 S. Williston, *Contracts* § 1326 (3d ed. 1968); *Sethre v. Washington Educ. Ass'n*, 22 Wn. App. 666, 672, 591 P.2d 838 (1979). Here, the landowner, by deeding the boulevard property to the City, fully performed its part of its agreement with the City. Therefore, the City did not breach the condition until it was called upon to perform in 1983.

The majority, having "established" that the City breached in 1913, then holds that the landowners have lost

their right to enforce the condition subsequent. The majority unfairly and upon a false premise states that, thus, the landowners' allegedly inequitable conduct justifies this result.

For example, the majority asserts that the landowners failed to exercise due diligence in determining whether a breach occurred. Majority, at 734. However, the trial court found that the landowners had exercised due diligence. Findings of fact 15–17. This court may not overturn the trial court's determination on this factual issue. *Brown v. Voss*, 105 Wn.2d 366, 373, 715 P.2d 514 (1986).

The majority dodges this difficulty by asserting that the landowners should have known of the City's breach because the State gave the shoreland to the City by "public law." Majority, at 735. This presumption deserves little weight. First, it has little application to a civil case. "The presumption that people know the law most frequently applies to criminal cases; it is more properly stated that one may not escape criminal liability by claiming ignorance of the law." *Hutson v. Wenatchee Fed. Sav. & Loan Ass'n*, 22 Wn. App. 91, 98, 588 P.2d 1192 (1978) (refusing to apply presumption in civil case). Second, this is not a "public law." It does not regulate public conduct, but merely conveys title to a particular strip of land.

Finally, the majority asserts that the landowners must have been aware that the new shorelands were being used as a public park because they owned adjacent property. Majority, at 735. However, the City's use of the property as a park is precisely what the parties contemplated:

As Dodge looked out of the window to his home, he saw the park's shoreland extending out beyond the parkway, and had a right to assume the City had fulfilled its promise to acquire the necessary shoreland. He was not put on notice this was land on which he would be forbidden to build a boathouse. The deed was issued in contemplation of parkland, and parkland was being constructed. Dodge had a right to believe that the City was fulfilling its promise.

Oral decision of trial judge, at 6, lines 5–15; see also findings of fact 9, 17.

The majority's attempt to cast blame on the landowners is unpersuasive. The novelty of the theory on which the majority rests its alternative holding verifies this failure. It is helpful to an understanding of the flaws in the majority to examine why conventional legal and equitable theories do not apply.

For example, the majority does not hold that the City has taken title by adverse possession. Because the City's possession of the boulevard property, even after its breach, was rightful until the landowners elected to reenter, the City's possession was not adverse. *Metropolitan Park Dist. v. Rigney,* 65 Wn.2d 788, 791–92, 399 P.2d 516 (1965). The landowners have not lost their right by adverse possession.

The majority also does not hold that the landowners have waived their right to reenter the property. Waiver is the intentional and voluntary relinquishment of a known right. *PUD 1 v. WPPSS,* 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985). The landowners never *actually* knew of the City's breach. Findings of fact 15, 16. The landowners have not waived their right.

Nor does the majority hold that the City can estop the landowners from declaring a forfeiture. To assert an estoppel, the City must show that the landowners made an admission, statement or act; that the City acted in reliance thereon; and that the City was injured. *McDaniels v. Carlson,* 108 Wn.2d 299, 308, 738 P.2d 254 (1987). Here, the City has not relied on or been injured by the passage of time. Finding of fact 19. The City cannot estop the landowners from declaring a forfeiture.

Nor does the majority's decision rest on laches. Laches requires both delay *and* prejudice to the other party. *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 51, 455 P.2d 359 (1969). The City has not been prejudiced by the passage of time. Finding of fact 19. The landowners have not lost their rights through laches.

The majority does not hold (though it seems to silently rely thereon) that the passage of time, by itself, has extinguished the landowners' rights in the boulevard property. The mere passage of time does not extinguish a power of termination. L. Simes & A. Smith, *Future Interests* § 1238 (2d ed. 1956).

The majority holds, in contrast, that the passage of time has extinguished the landowners' rights in the boulevard property *only because the City has breached the condition.* The majority embraces this rule because powers of termination "clutter up titles with outmoded restraints, or with factors that have nothing to do with land use", majority at 734, citing Washington State Bar Ass'n, *Real Property Deskbook* § 6.3 (1979), and because "they involve a potential forfeiture of the transferred interest." Majority, at 734.

These factors might justify the adoption of a rule which limits the effective duration of *all* conditions subsequent. Their exemption from the rule against perpetuities appears to be the result of mere historical accident. L. Simes & A. Smith, *Future Interests* § 1238 (2d ed. 1956) ("No very satisfactory reason is suggested in the cases."). Indeed, this court has adopted similar limitations in related areas of property law.

For example, rights of first refusal are often cast in the form of conditions subsequent. L. Simes & A. Smith, *Future Interests* § 1154 (2d ed. 1956). We recently held that the holder of a right of first refusal can only exercise the right for a reasonable time after its creation. *Robroy Land Co. v. Prather,* 95 Wn.2d 66, 622 P.2d 367 (1980).

Restrictive covenants may also effectuate the same purposes as conditions subsequent. L. Simes & A. Smith, *Future Interests* § 1991 (2d ed. 1956). Under the doctrine of changed conditions, a court will not enforce a covenant if the character of the neighborhood has so changed as to make it outmoded. Stoebuck, *Running Covenants: An Analytical Primer,* 52 Wash. L. Rev. 861, 883–85 (1977) (in

this area of the city there has been little change over the decades). Also, under the doctrine of comparative hardship, a court will not enforce a covenant if it would "deprive the defendant of the really beneficial use of his land without materially benefiting the plaintiff." 1 Washington State Bar Ass'n, *Real Property Deskbook* § 17.22 (1986). It may be that this court should similarly limit the effective duration of conditions subsequent. However, the City did not raise these issues in this case.

The considerations the majority opinion articulates *do not* support the rule it applies. Conditions subsequent potentially clutter up titles and involve forfeitures *whether they have been breached or not. See* 1 Washington State Bar Ass'n, *Real Property Deskbook* §§ 6.2, 6.3 (1986). These effects remain the same whether the breach occurred in 1913, or in 1983, or not at all. The majority's rule applies only if there has been a breach.

I submit this result is wrong, that all conditions subsequent should be treated alike and relief should not be conditioned upon an irrelevant fortuity.

For the above reasons, I would grant the landowners a remedy. I would also hold that the trial court erred in awarding damages based on the value of the unpermitted boathouse. The proper remedy for breach of a condition subsequent is reentry to the land granted. *Mills v. Seattle & M. Ry.,* 10 Wash. 520, 39 P. 246 (1895). *See also Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964). The landowners became entitled to possession of the boulevard property in 1983, when they exercised their power of termination. The landowners are entitled to compensation for their loss, in 1983, of their rights to this parcel. *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 548 P.2d 1085 (1976). Damages should be figured as the difference between the fair market value of the entire tract, including the boulevard property, and the fair market value of the remainder. *State v. McDonald,* 98 Wn.2d 521, 526, 656 P.2d 1043

(1983). I would remand to the trial court to have damages redetermined accordingly.

DURHAM, J., concurs with CALLOW, J.