[No. 11550.   Department Two.   April 28, 1914.]

W. C. BROKAW *et al.*, *Respondents*, v. THE TOWN OF STANWOOD, *Appellant.*[1]

HIGHWAYS—VACATION — ABANDONMENT — BURDEN OF PROOF — EVIDENCE—SUFFICIENCY. The burden of showing that a dedicated street in an unincorporated town was vacated by remaining unopened for the space of five years, as provided in Ballinger's Code, § 3803, is upon the party resting claims upon such fact; and the mere fact that there was no public travel upon the northerly half of such a street does not show that the street was unopened for public use.

SAME — PRESCRIPTIVE RIGHTS — CONSTRUCTIVE POSSESSION. If a highway is physically open to the free use of the public, the public's constructive possession is sufficient to protect its acquired paper title.

MUNICIPAL CORPORATIONS—STREETS—ABANDONMENT — VACATION— STATUTES—APPLICATION. Ballinger's Code, § 3803, providing that any road which remains unopened for public use for the space of five years shall be vacated, has no application to streets in cities and towns; and the incorporation of a town exempts from the operation of the statute all roads within the limits that were not vacated at the time of the incorporation.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered June 11, 1913, upon findings in favor of the plaintiff, in an action for an injunction. Reversed.

*Joseph H. Smith*, for appellant.

*Geo. M. Mitchell* and *W. P. Bell*, for respondents.

PARKER, J.—The plaintiffs are in possession of, and claim title to, a strip of land which the town of Stanwood, in Snohomish county, threatens to take possession of and improve as a portion of a public street. The plaintiffs commenced this action in the superior court for that county, seeking to enjoin the town from so doing. A trial was had, resulting in judgment and decree in favor of the plaintiffs as prayed for,

[1]Reported in 140 Pac. 358.

from which the town has appealed.   The questions presented
are:  Has the strip involved ceased to be a part of an exist-
ing public street, the street having at one time been dedicated
to such use so as to include the strip? and have respondents
acquired title by adverse possession as against the town?

The controlling facts are not in dispute, and may be sum-
marized as follows:  Stockbridge's Fourth addition to the
town of Stanwood was surveyed and platted by the owners of
the land covered thereby into lots, blocks, and streets, the
latter being regularly dedicated to public use as such, and
the plat duly recorded in the office of the auditor of Sno-
homish county on July 1, 1891.  Block 5 of the addition, as
shown upon the plat, is bounded on the west by Union street,
and on the south by Rainier street.  In October, 1902, the
respondents became the owners of lots 1 to 7, inclusive, in
block 5, being the westerly 280 feet of that block.  We infer
from the record, though it is not clear, that the title then
acquired by respondents was by conveyance from the original
plattors and dedicators, describing the land conveyed by lot
and block numbers, and name of the plat.  Immediately there-
after, respondents took possession of the strip of land here in
controversy, being a strip 16½ feet wide and 280 feet long,
lying immediately to the south of, and adjoining their lots,
which strip lies within the boundaries of Rainier street as
platted and dedicated, occupying somewhat less than the
northerly half of that street.  Respondents have, ever since
then, had actual, physical possession of the strip, claiming
to be the owners thereof as against all the world.  There has
never been any public travel upon Rainier street, nor has
there ever been any public money expended in the improve-
ment thereof.  Whether or not Rainier street was physically
enclosed or obstructed in any way, so as to prevent use there-
of by the public by the usual means of travel upon public
highways, during any portion of the period from its original
platting and dedication in 1891 to the taking possession of
this portion thereof by the respondents in 1902, we are left

entirely without information, so far as this record is con-
cerned. And, since the record before us purports to contain
all the facts brought before the trial court, we must assume
that no evidence whatever was there presented upon that ques-
tion. The town of Stanwood was incorporated in October,
1903, about one year after respondents took possession of the
strip, since which time the addition has been within the cor-
porate limits of the town. Prior to that time, the addition
was not within the corporate limits of any city or town. Re-
spondents' claim of title may be regarded as resting upon
two grounds, which we will notice in order.

Respondents claim title upon the theory that Rainier street
was vacated and the strip in controversy thereby rendered a
part of their adjoining lots before they acquired title to the
lots and took possession of the strip. This claim is rested
upon the assumption that the vacation was accomplished by
Rainier street remaining "unopened for public use" for a
period of more than five years after its platting and dedica-
tion, within the meaning of § 32, Laws of 1890, p. 603; Bal-
linger's Code, § 3803, in force prior to 1909, reading as fol-
lows:

"Any county road, or part thereof, which has heretofore
been or may hereafter be authorized, which remains unopened
for public use for the space of five years after the order is
made or authority granted for opening the same, shall be
and the same is hereby vacated, and the authority for build-
ing the same barred by lapse of time."

The real question in this branch of the case is: Was
Rainier street, in fact, "unopened for public use" for a period
of five years following its dedication, and prior to respond-
ents' taking possession of the strip here involved? Our at-
tention is directed to *Murphy v. King County*, 45 Wash.
587, 88 Pac. 1115, and *Cheney v. King County*, 72 Wash.
490, 130 Pac. 893, which are principally relied upon by coun-
sel for respondents. In the *Murphy* case, the court stated,
at page 590, that "the streets were covered with a heavy

growth of timber and underbrush and had never been open to
public travel." There was, apparently, in that case, no con-
troversy as to that fact, the real question being as to whether
dedicated streets upon a plat made by owners of land outside
of the corporate limits of any city or town constituted such
streets county roads, within the meaning of the Law of 1890,
above quoted. The court there simply assumed that the
streets had remained unopened for public use for more than
five years following their dedication, as to which question
there seems to have been no controversy, and then gave its
consideration to the real question in the case. In the *Cheney*
case, there was evidence tending to affirmatively show that
the street involved was, in fact, not physically open to public
use, that is, that it was not physically capable of being used
by the usual means of travel upon public highways. The
paths there mentioned did not proceed along the street in any
measureable degree within the side lines of the platted street.
The street was held to have remained unopened for public use
for more than five years following its dedication, because
there was evidence affirmatively so showing that to be a phy-
sical fact. In *Taylor v. Howell-Hill Mill Co.*, 74 Wash. 66,
132 Pac. 726, it is assumed, rather than decided as a contro-
verted fact, that the street was never opened to public use.

In the case before us, we have no evidence whatever that
Rainier street was unopened for public use during any por-
tion of the period from the time of its dedication in 1891 to
the taking possession of this portion thereof by respondents
in 1902. For aught that appears in this record, and we are
to remember that all of the evidence presented to the trial
court is before us, Rainier street, along in front of respond-
ents' lots, may have, during this entire period, been actually
physically open for public use, unobstructed, unenclosed and,
by nature, well suited for ordinary travel by such means as
are in common use upon public highways. Shall we presume
to the contrary, in the total absence of proof upon that ques-
tion? We are of the opinion that we should not do so, and

that the burden of showing that such a street has remained unopened for public use for the period named in the statute should be upon those who rest their claims upon such a fact. Nor do we think that the fact that there was no public travel upon the street during the period from its dedication to respondents' taking possession thereof argues that it was unopened for public use during that period. The public is not, under all circumstances, obliged to take physical possession of public highways whether they have been acquired by dedication or otherwise, in order to preserve its rights therein. If a highway is, in fact, physically open to the free use of the public as a highway, we think the public's constructive possession thereof is sufficient to protect its acquired paper title thereto. It is not so much a question of the public being in actual physical possession of the highway as it is a question of someone else being in possession thereof, claiming adverse to the public. We have no evidence here whatever, as we have noticed, indicating that any such claim was ever asserted during the eleven-year period following the dedication of this highway up to the time respondents took possession of the portion thereof here involved.

We are of the opinion that, at the time respondents took possession of this strip of land, Rainier street has not been shown to have been vacated in the manner claimed, and that the public's paper title thereto being perfect at all times, the burden was on respondents to show a better title. It might well be argued, from the facts shown in this record and the fair inferences to be drawn therefrom, that the conveyance of these lots by the original dedicators of this street and the plattors of this addition in 1902 describing them by lot and block numbers and the name of the addition, was, in substance, a rededication of this very street at the time. 13 Cyc. 455. Upon this interesting question, however, we express no opinion.

As to respondents' adverse possession, little need be said, in view of the conclusions we have reached on the question of

the claimed vacation of Rainier street prior to the time their adverse possession commenced. Having reached the conclusion that the street was not shown to be vacated at that time, it is manifest that respondents' adverse possession can avail them nothing here. We have noticed that the town of Stanwood became incorporated in 1903, only one year following the commencement of respondents' adverse possession of the strip in controversy. That incorporation brought the street within the corporate limits of the town, thereby exempting it from the further operation of the law of 1890 above quoted. It was, thereafter, no longer subject to vacation or to being lost to the public by the operation of that statute, since that statute had no application to streets within cities and towns. *West Seattle v. West Seattle Land and Imp. Co.*, 38 Wash. 359, 80 Pac. 549; *Murphy v. King County*, 45 Wash. 587, 88 Pac. 1115.

We conclude that the judgment and decree of the trial court must be reversed upon the ground that Rainier street, in front of respondents' lots, is still an existing public street.

It is so ordered.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.