[No. 40706-6-I.   Division One.   August 10, 1998.]

REAL PROGRESS, INC., *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.

834

*Mark H. Sidran, City Attorney*, and *Sandra M. Watson, Assistant*, for appellant.

*Richard M. Stephens* of *Groen & Stephens*, for respondent.

COLEMAN, J. — This case concerns the retroactive application of the 1889-90 nonuse statute that provides for the vacation of county roads that remain unopened for five years after being authorized. Because we find that the express language of the statute requires a retroactive application and neither the government's nor the public's interest in the street rose to the level of a vested right, we affirm the Superior Court's grant of summary judgment.

## FACTS

On February 6, 1884, Guy C. and Nellie Phinney recorded a plat for "Maynard's Lake Washington Addition to the City of Seattle" in the King County records. Except for the streets in a section of the plat designated as Lake Avenue Park, the plat dedicated all streets shown on the plat to the use of the public forever. The subject property is Lot 7 of Block 60 within this subdivision and is bordered on the south by an unopened section of South Oregon Street.

At the time of platting, the area was near but outside the incorporated area of Seattle. In 1893 the area was incorporated into the City of Columbia. In 1907 the entire City of Columbia, including the subject area, was annexed into the City of Seattle.

Also in this time frame several statutory enactments and court opinions addressed street vacations resulting from the failure to open a road. In 1890, six years after the Phinneys dedicated the streets in their plat, the Legislature enacted a statute governing the creation of county roads. LAWS OF 1889-90, ch. 14, pp. 593-611. Before this chapter became law, there were no provisions for the automatic

vacation of an unopened street. Rather, the common-law doctrine of abandonment applied. The Road Laws of 1890 provided detailed coverage on the procedure for establishing county roads and included a section on the effect of county inaction in establishing a road after authorization had occurred. Section 32 provided that

> [a]ny county road, or part thereof, which has heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time.

LAWS OF 1889-90, ch. 14, § 32, p. 603.

The City points out that no provision in this chapter relates to the creation or vacation of streets created by the filing of plats of towns or additions to towns and argues that the nonuse provisions should not be applied to streets dedicated in plats. However, in 1907, the Washington Supreme Court held that vacation by the nonuser provisions of section 32 did indeed apply to streets dedicated in plats. *Murphy v. King County*, 45 Wash. 587, 88 P. 1115 (1907).

The Legislature immediately reacted to *Murphy* by amending section 32 during the following legislative session. The addition provided

> [t]hat the provisions of this section shall not apply to any highway, street, alley or other public place dedicated as such in any plat, whether the land included in said plat be within or without the limits of any incorporated city or town, nor to any land conveyed by deed to the state or to any town, city or county for roads, streets, alleys or other public places.

LAWS OF 1909, ch. 90, § 1, p. 188. These provisions are currently codified at RCW 36.87.090.

On April 11, 1996, Real Progress brought a declaratory action to quiet title to a portion of the street abutting its lot (lot 7, block 60) under the above described nonuser

statute. The City answered by asserting that the nonuse provision did not apply because the street was created by a plat, that the area should not be treated as a county area because it was filed as an addition to the city, that the 1909 amendment should be applied retroactively because it made clear the Legislature's intent to exclude all streets created by dedication in plats, and that the city of Columbia's incorporation in 1893 included the subject property and therefore tolled the running of the five-year nonuse period which began in 1890. In addition, the City claimed that the doctrine of laches barred Real Progress from raising the issue 100 years after the fact. The Superior Court granted summary judgment in favor of Real Progress and quieted title to the portion of the road adjacent to Real Progress's property to Real Progress.

Many of the City's assertions have been previously addressed and are controlled by prior Supreme Court precedent. We briefly address these issues before turning to the main issue of this appeal—whether the five-year nonuse period of the 1890 statute should be applied retroactively to streets dedicated before 1890.

## ISSUES

Standard of Review.

This court reviews a trial court's summary judgment decision de novo. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996). The moving party bears the burden of demonstrating an absence of any genuine issue of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Courts are to consider all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Magula v. Benton Franklin Title Co.*, 131 Wn.2d 171, 182, 930 P.2d 307 (1997).

Neither party claims that there were disputed issues of material fact or that summary judgment was not proper. Thus, our review is de novo.

The Statute applies to streets dedicated by plat.

■ The City argues that the 1890 county roads statute applied only to county roads established by county commissioners and therefore did not apply to streets created by dedication in plats. Despite the merits of this argument, the City recognizes that the Supreme Court ruled that the nonuse provision applied to streets created when property owners filed plats in unincorporated areas. *Murphy*, 45 Wash. at 593. In addition, while subsequently recognizing that it had interpreted the statute too broadly, our Supreme Court nevertheless continued to apply the nonuse provision to dedicated streets because it had "become and remained a rule of property[.]" *Tamblin v. Crowley*, 99 Wash. 133, 138, 168 P. 982 (1917); *see also Wyckoff v. City of Seattle*, 60 Wn.2d 100, 103, 371 P.2d 935 (1962) (recognizing that *Murphy*'s holding was too broad, but declining to reverse its prior decision).

Because there is clear Supreme Court authority holding that streets dedicated in platted tracts of land outside of cities and towns come within the purview of the 1890 nonuse statute, we will not revisit the issue or depart from well-settled law. *See Howell v. King County*, 16 Wn.2d 557, 558, 134 P.2d 80, 150 A.L.R. 640 (1943); *Murphy*, 45 Wash. at 593. Rather, this is an issue that the Supreme Court can address if it so chooses.

Words alone cannot make a plat part of the City of Seattle.

Next, the City claims that under the laws in effect at the time the Phinneys recorded the plat, the use of the words "addition to" had the effect of making the platted area a part of the City and therefore the dedicated roads should be exempted from the nonuse statute because they were not county roads. The code at the time the plat was recorded provided:

> Every person hereinafter laying off any lots in addition to any town, shall, previous to the sale of such lots, have the same recorded under the like regulations as are provided for recording

the original plat of said town, and thereafter the same shall be considered an addition thereto.

CODE OF 1881, § 2330, p. 401.

Real Progress argues that towns were different entities from cities because no governmental body played a part in the creation of towns. In addition, Real Progress argues that the section must be read in context of the entire chapter, and when that is done, it becomes clear that the goal of the provision was to ensure that lot purchasers knew what amenities were included with the plat.

■ Indeed, courts have placed more weight on whether the cities or towns are incorporated than on the words used in naming the plat. *See Starwich v. Ernst*, 100 Wash. 198, 203, 170 P. 584 (1918) (stating that a plat executed and filed in 1869 as an addition to the then existing City of Seattle did not result in instant incorporation as evidenced by the plats incorporation as part of South Seattle in 1905); *Murphy*, 45 Wash. at 592 (filing a plat outside the limits of an incorporated city, town, or village, made the dedicated public streets county roads subject to the nonuse statute). We likewise find that the use of the phrase "addition to the city of Seattle," without more, does not make the platted streets part of an incorporated area. Furthermore, the fact that the subject property was included in the city of Columbia's incorporation in 1907 is evidence that it had not become an addition to the City of Seattle.

Retroactivity.

■ The issue of retroactivity requires us to answer two questions. First, we address the City's claim that the 1909 amendment to the 1890 nonuse statute should be applied retroactively. Then we address whether the 1890 nonuse statute itself should be applied retroactively. Statutes are presumed to be prospective unless there is a clear indication that a retroactive effect was intended. *City of Ferndale v. Friberg*, 107 Wn.2d 602, 605, 732 P.2d 143 (1987); *State v. Ladiges*, 63 Wn.2d 230, 234, 386 P.2d 416 (1963). Even where there is a clear indication that the Legislature

intended a retroactive application, "[a] statute may not be given retroactive effect . . . where the effect would be to interfere with vested rights." *Gillis v. King County*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953).

The *Gillis* court, in evaluating this very same amendment that clarified the Legislature's intent to exclude roads dedicated by plat from the nonuse provisions, found that the Legislature intended to include all plats which could be legally affected by the amendment. *Id*. at 379. The *Gillis* court limited the retroactivity of the amendment by stating that "the proviso could not legally affect plats which had been on file for five years, since the rights of abutting owners to the vacation of such unopened streets had then become vested." *Id*.

■ It is clear that the 1909 amendment cannot be applied to the Real Progress property because it was platted in 1884, more than five years before the 1909 amendment. Pursuant to *Gillis*, if the county failed to open the road within five years of platting, the adjacent landowners would have acquired a vested right in the vacated property.

■ ■ Turning now to the 1890 statute itself, we again apply the legal rule that statutes with a clear expression of retroactive intent will be so applied unless they interfere with a vested right. The determination of retroactivity of the 1890 statute is pivotal to the outcome of this case. If the statute is found to provide for prospective application only, then the nonuse provisions will be tolled by the 1893 incorporation of the plat as part of the city of Columbia because the nonuse statute applies only to county roads. *See Brokaw v. Town of Stanwood*, 79 Wash. 322, 327, 140 P. 358 (1914) (stating that incorporation brought the street within the corporate limits of the town, thereby exempting it from the further operation of the nonuse statute).

Even though the statute, stating that "[a]ny county road, or part thereof, which has heretofore been or may hereafter be authorized," clearly evidences the Legislature's intent to have the statute apply retroactively, the City raises two arguments against a retroactive application of

the statute. LAWS OF 1889-90, ch. 14, § 32, p. 603 (emphasis added).

First, the City states that retroactive application is prohibited if such application would affect or impair existing rights. *See Moran v. City of Seattle*, 179 Wash. 555, 560, 38 P.2d 391 (1934) (stating that a statute that limited the City's collection of past due water and electricity bills to those past due for four months or less should be applied prospectively only because to hold otherwise would deprive the City of the benefit of the prior law). The City would like us to treat vested rights and existing rights similarly. However, these two doctrines are not equivalent.

■ In *Moran*, the court stated, "It is well settled in this state, as elsewhere, that, if the language of a statute be doubtful, or if the legislative intent does not clearly appear therefrom, the courts will not give the statute a retroactive effect when to do so would impair existing rights." *Id.* The existing rights doctrine is a rule of statutory construction and applies only when the statute is ambiguous regarding retroactive application. *Gillis*, 42 Wn.2d at 378. The vested rights doctrine, on the other hand, implicates constitutional protections and prevents a retroactive application even when the legislative intent is clear.

■ ■ In this case, the City does not have a vested right in the street as its right is most accurately described as a right contingent upon some further action to open the street.[1] Thus, the City's right is appropriately characterized as an existing right. Since the 1890 statute is not ambiguous, the existing rights doctrine will not supersede the statutory language directing a retroactive application of the five-year nonuse period.

■ The City next argues that even if the county's right

---

[1]While the City argues that at the time of platting, there was no requirement that the governmental body must accept or perform an act to acquire the right to the property, our Supreme Court has previously held otherwise. *See Miller v. King County*, 59 Wn.2d 601, 604, 369 P.2d 304 (1962) (stating that grants to the public included in plats were considered to contain an implied condition that had to be satisfied before the grant became operative).

is classified as an existing right, the public had a vested right in the street at the time of platting. We note that while the City emphasized this theory at oral argument, they did not differentiate between the public's and the government's right in their reply brief. Except for the situation where the public obtains an easement through prescription, the public cannot obtain title to land without some kind of government acceptance. In this case, government acceptance had to take the form of opening the street.

In conclusion, we note that in order for the City to prevail on its theory that the nonuse statute cannot be applied retroactively, we must find that the Legislature was without authority to make the 1890 statute retroactive. We cannot do so. The Legislature has the authority to implement guidelines and limit the power of its political subdivisions, and the guidelines in this case do not impair vested rights.

Furthermore, the Supreme Court has previously applied the 1890 statute retroactively. In 1933, the Supreme Court reviewed a dispute concerning ownership to a street that was platted just prior to the nonuse statute in 1889 and applied the five-year nonuse period from the date of platting. *Lewis v. City of Seattle*, 174 Wash. 219, 221, 24 P.2d 427 (1933).

Laches.

Finally, the City argues that Real Progress is barred by laches from claiming the nonuse statute operated to quiet title in their property in the late 1800s. The City's argument is properly before us as laches was raised below by Real Progress. In addition, contrary to Real Progress's argument that a laches defense was preempted because its rights in the street vested by operation of law at the end of the five-year nonuse period, a judicial determination is still necessary to determine when, if ever, the statutorily required nonuse elements had been satisfied. *Id.* at 224; *Wells v. Miller*, 42 Wn. App. 94, 97, 708 P.2d 1223 (1985).

Laches is an equitable defense based on estoppel

and applies when the defendant asserting the doctrine affirmatively establishes: "(1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such fact; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to defendant resulting from the delay in bringing the action." *Davidson v. State*, 116 Wn.2d 13, 25, 802 P.2d 1374 (1991). While the City satisfies its burden on the first and second prong of the test, it fails to establish that it was damaged by the delay.

First, it is clear that Real Progress or its predecessors in interest are charged with knowledge of the facts constituting nonuse as "[a]ll persons are charged with knowledge of the provisions of statutes and must take notice thereof." *Id.* at 26 (quoting *Martin v. City of Seattle*, 111 Wn.2d 727, 735, 765 P.2d 257 (1988)). Second, waiting over 100 years to bring the action can easily be considered unreasonable because much shorter periods have previously been held to be unreasonable. *See Martin*, 111 Wn.2d at 735 (finding that plaintiffs had lost their right of reentry to shorelands due to a 70-year delay). Finally, the City claims that they are damaged by Real Progress's 100-year delay in bringing the action because it is impossible to locate any evidence of whether the street was ever opened during the five-year period after platting.

Real Progress, however, presented evidence from which the trial court could have reasonably concluded that the road was never opened. An aerial photograph taken in 1936 was reviewed by a professional civil/geotechnical engineer with experience and training in photo interpretation. He concluded that "no streets or roads, or even footpaths" were developed in the subject area. In addition, a Sanborn Insurance Company map from 1920 shows the plat with a notation of "impassable" on the area of the dedicated street. The map indicates that the area is impassable as the result of a 20-foot high bank. Finally, a professional land surveyor with over 30 years' experience within the City of Seattle surveyed the property and reported:

Within the above legally described street area, I found no evidence of public improvements, such as streets, roads, utilities, walks or pathways; nor did the field crew working under my direction find evidence of same. Public records are conclusive that no utilities, either private or public, either overhead or underground, are located in subject street area . . . . We also detected no visual evidence of past or present public use of the street area of any sort . . . .

Subject street area is very steep, except for about the east 30 feet. The slope of the subject street area in the steep portion ranges from 45% to 80% . . . . Subject street area is impassable to vehicular traffic.

The City does not dispute this evidence. Rather, the City states that the evidence is irrelevant because the question is whether the street was opened within five years of being platted, not whether it was in use in 1920, 1936, or at present. While it is true that the City may have had a better opportunity to show that the street was opened if the property owners would have brought their quiet title action earlier, the evidence presented by Real Progress makes it highly unlikely that the street was ever opened. It is difficult to imagine a street running through an area with "impassable" physical characteristics. Moreover, casual, intermittent, or inconsequential use of a platted street or alley is insufficient to prevent vacation by operation of the nonuse statute. *See Lewis*, 174 Wash. at 223; *Smith v. King County*, 80 Wash. 273, 276, 141 P. 695 (1914).

Because it is unlikely that the City was prejudiced by Real Progress's delay in bringing this quiet title action, Real Progress's claim is not barred by laches. The trial court was correct in granting summary judgment in favor of Real Progress because when all the evidence and reasonable inferences are taken in the light most favorable to the City, no reasonable mind can infer that the street was opened within five years of platting.

In sum, we find that the language of the 1890 nonuse statute expressly directs a retroactive application because the dedication of a street did not create a vested right in

1884. Rather, the municipal body in charge was required to take some action to open the street. We affirm the trial court's order of summary judgment in favor of Real Progress because there is no evidence that any action was taken to open the street.

BECKER and COX, JJ., concur.