[No. 19481-7-III. Division Three. May 22, 2001.]

LUKE HATLEY, *Appellant*, v. THE CITY OF UNION GAP, *Respondent*.

*Ronald L. Skala* (of *Weeks & Skala*), for appellant.

*Don W. Schussler* (of *Halverson & Applegate, P.S.*) and *G. Scott Beyer* (of *Menke, Jackson & Beyer, L.L.P.*), for respondent.

SWEENEY, J. — Luke Hatley connected his Union Gap property to the city water system and paid a connection charge in 1995. The property was unoccupied, so Mr. Hatley kept the water turned off. In 1998, the City of Union Gap added an "infrastructure" charge to its water services connection charge. In 1999, Mr. Hatley was ready to turn on his water. The City demanded that he pay the new "infrastructure" charge. The question presented is whether Mr. Hatley was already "connected" to city water and was, therefore, not subject to the 1998 infrastructure charge. We conclude that he was not subject to the infrastructure charge and reverse the trial court.

## FACTS

Luke Hatley owned a piece of land with a mobile home on it in Union Gap, Yakima County. He applied to connect his property to the Union Gap municipal water system and paid the service connection charge of $661.91 required by Union Gap Municipal Code (UGMC) 12.04.030.[1]

Union Gap installed ¾-inch pipe and a meter that connected the property to the city water supply on November 30, 1995. At the same time, a line was installed connecting the meter to the mobile home. The City opened utility account No. 10-10294-00. The City concedes that an "account was created for bookkeeping purposes." Clerk's Papers (CP) at 174. The water was turned on for a brief pressure test, then turned off. The account remained dormant.

Three years later, in November 1998, Union Gap enacted Ordinance No. 2133, adding a new section to the UGMC. The original UGMC section 12.04.030 became section 12.04.030(a). New section 12.04.030(b) required an additional "infrastructure" charge over and above the previous service connection charge required by section 12.04.030(a). The new charge was to be assessed upon "those persons establishing an account for water service or increasing the size of the meter." CP at 98. The charge was based on meter size. A ¾-inch meter was $1,844.26. On December 13, 1999, Ordinance No. 2133 was repealed and replaced by Ordinance No. 2209.

Ordinance No. 2209 also provides for an infrastructure fee of $1,844.26, but ties it to a unit called an equivalent residential unit, ERU, which equals 1,400 cubic feet per month. It imposes the infrastructure charge "for making a service connection . . . from the main trunk line to the property line." CP at 101.

In May 1999, Mr. Hatley rented the home on the property.

[1] UGMC 12.04.030 provided, in pertinent part: "The charge for making service connection from the main trunk line to the property line of the applicant shall be the cost to the city, plus ten percent."

The new tenant asked Union Gap to turn the water on. The City demanded that Mr. Hatley first pay the new infrastructure fee. Mr. Hatley refused. And Union Gap refused to turn on his water.

Mr. Hatley sued for declaratory judgment and damages. He alleged the new ordinance violated its enabling statute, RCW 35.92.025, and that it violated RCW 82.02.020, which limits connection charges to the property's proportionate share of the costs of the system. He claimed a vested right to water delivery because he established his account before the new ordinance was enacted. He asked the court to order the City to turn on his water, and award him damages and attorney fees under 42 U.S.C. § 1988.

The City took the position that no "connection" was established until the water valve was opened, water was delivered to the property, and a monthly service fee was paid. Payment of the new fee was therefore required before this process could be completed. Both sides moved for summary judgment. The court entered summary judgment for Union Gap and denied Mr. Hatley's motion for summary judgment and later his motion for reconsideration.

## DISCUSSION

Contentions. Mr. Hatley contends his due process rights are violated by the retroactive application of Ordinance No. 2133 to his vested right. *Caritas Servs., Inc. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 413, 869 P.2d 28 (1994). He argues that the City is authorized to collect the fee only when service is connected to an address for the first time. He argues that nothing in the 1995 connection fee ordinance requires that the valve be in the open position at the time of the connection to the system or within any particular time limit. By paying the fee, having a meter installed, and connecting the meter to the residence, Mr. Hatley satisfied all the statutory requirements to connect to city water.

Union Gap responds that "connection" is a two-part

process: one, install the meter; two, turn the water on. Mr. Hatley paid only for the meter installation in 1995. He was not *connected* until 1999, when the valve was opened. His service was never established because he did not begin using the water.

The question for us, then, is whether Mr. Hatley "connected" to the system before the challenged ordinance was passed. We need not rule on the ordinance's validity if Mr. Hatley is not subject to the ordinance.

■ Standard of Review. We review summary judgment de novo, performing the same inquiry as the trial court. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 854, 827 P.2d 1000 (1992). Summary judgment should be granted if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). But where the material facts are undisputed, no element of discretion is involved, and our task is to determine whether applicable legal principles support the trial court's ruling. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992).

Here, the facts are not in dispute. The sole issue is whether, by installing a meter and opening an account in 1995, the City and Mr. Hatley established a "connection" as defined by RCW 35.92.025. This is a legal question.

■ Statutory Construction. We review the interpretation of city ordinances de novo under the error of law standard. *Peter Schroeder Architects v. City of Bellevue*, 83 Wn. App. 188, 191, 920 P.2d 1216 (1996). Ordinances are construed in the same manner as statutes. *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 392, 816 P.2d 18 (1991). Tax statutes are strictly construed. Any ambiguity is construed most strongly against the taxing agency and in favor of the taxpayer. *Ski Acres*, 118 Wn.2d at 857. We defer to the construction placed on the ordinance by the agency enforcing it, but only if the ordinance is ambiguous. *Schroeder*, 83 Wn. App. at 191. We look no further for the

meaning of the ordinance if the plain language is not ambiguous. *Id.* at 192.

■■ Statutes are presumed to apply prospectively unless they contain express language indicating that the Legislature clearly intends to apply the law retroactively. *Real Progress, Inc. v. City of Seattle*, 91 Wn. App. 833, 840, 963 P.2d 890 (1998); *City of Ferndale v. Friberg*, 107 Wn.2d 602, 605, 732 P.2d 143 (1987). A statute will not, however, be given retroactive effect, regardless of the intention of the Legislature, if to do so would interfere with a vested right. *Gillis v. King County*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953).

■ Union Gap Ordinance. Here, the relevant ordinance, No. 2133, was in effect when Mr. Hatley asked for his meter valve to be opened. But nothing in the ordinance suggests an intent to apply it retroactively. It, therefore, applies only to connections after its effective date. If Mr. Hatley connected to the system before, the new charge does not affect him.

We reject the City's assertion that he did not connect in 1995. Again, nothing in the language of the ordinance suggests a requirement that water be flowing or that a monthly bill be paid in order to be connected. Neither does it say anything about persons opening accounts.

There is no distinction between availability of city services after physical connection and actual use. *Lake Stevens Sewer Dist. v. Vill. Homes, Inc.*, 18 Wn. App. 165, 177, 566 P.2d 1256 (1977) (sewer charges). It is immaterial that the buildings are unoccupied or that no actual flow is occurring through the pipes. *Id.*

Besides that, the plain language of Ordinance No. 2133 defines "connecting." It means making a "service connection from the main trunk line to the property line." CP at 97. This is what Mr. Hatley did in 1995.

Mr. Hatley was connected in 1995. He is not, then, subject to Ordinance No. 2133 or the infrastructure charge.

We, therefore, reverse and remand.

BROWN, A.C.J., and SCHULTHEIS, J., concur.