# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN ROBINETT PENSION PLAN & TRUST, a Washington trust, | ) ) ) | No. 76214-1-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF SNOHOMISH, a Washington municipality; and BICKFORD INVESTMENTS, L.L.C., a Washington limited liability company, | ) ) ) ) ) | |
| Respondents. | ) ) | FILED: January 16, 2018 |

TRICKEY, A.C.J. — The John Robinett Pension Plan & Trust (the Trust) filed this quiet title action under Washington's 1890 "nonuse" statute, alleging that an encroaching street right of way was never opened for public use within five years of its 1890 dedication. Because there are no genuine issues of material fact and the Trust's claim is barred by laches, we affirm the summary judgment dismissing the claim.

## FACTS

The relevant facts are essentially undisputed. Appellant John Robinett Pension Plan & Trust and respondent Bickford Investments, LLC (Bickford) own two parcels of real property in Snohomish, Washington. The parcels are separated by a 70-foot public right of way (the Right of Way).

A public paved road (the Road) running generally east to west from State Route 9 to Bickford Avenue lies within a portion of the Right of Way. The Right of

Way to the south of the Road extends over part of the Bickford property. The Bickford property is currently unimproved, but contains foundations and concrete floors from prior structures.

The Right of Way to the north of the Road extends over part of the existing house and yard on the Trust property. The house was built in 1948.

The Right of Way was dedicated as High Street in the Plat of Panting's Addition to Snohomish County, recorded on March 22, 1890. The Road is currently designated as 66th Street or 20th Street in public records. The city of Snohomish (City) annexed the area in 2001 and maintains the Road.

In 1903, the county surveyor reported on a petition to open Schubert Road (the Schubert Road Report). The report identified only three properties that the proposed road would pass through and the three affected property owners. All three properties were located in Section 6, Township 28, Range 6. The Bickford and Trust properties are in Section 1, Township 28, Range 5 of Panting's Addition, an area to the west of the properties identified in the 1903 report.

In 1914, a petition sought to establish Wm. Robinson Road. As with the Schubert Road petition, the identified petitioners all owned property in Section 6, Township 28, Range 6.

In undisputed declarations, Thomas E. Barry, a licensed surveyor, reviewed the Schubert Road Report from 1903 and the Wm. Robinson Road survey records from 1914 to 1915 (Road Survey #541) and concluded:

I have reviewed the documents concerning the 1903 petition for establishment of Schubert Road . . . . The petitioned right-of-way does not include any landowners in Panting's Addition. It infers that High Street was a platted public road, with no ownership interest by adjoining blocks or lots. If the petition intended to establish a new public county road, then the owners of the adjacent lots and blocks would have been required to sign the petition. The only landowners who signed [the] petition were located in Section 6 which is east of Panting's Addition. The road alignment, as petitioned, connected Schubert Road to High Street. The petition appears to recognize that High Street was an existing established public road. Thus, it did not require signatures by owners abutting the already established High Street.

. . . I have reviewed the survey notes for the County Road Survey #541 for Wm. Robinson Road. This survey was conducted in 1914, 11 years after the 1903 petition. The survey notes include references to an existing traveled road on pages 38-40 of field notes (pages 42-44 of the Robinett Declaration). This "traveled way" is along High Street. It is clear that an improved road existed prior to 1914. The 1903 petition did not include any signatures of the landowners in Panting's Addition. It can be inferred that a "traveled way" existed at the time the 1903 petition was granted.[1]

Barry also noted that the 1914 to 1915 survey identified existing block corners along High Street within Panting's Addition, consistent with the 70-foot wide dedication on the 1890 plat map.

The surveyor indicates the recovery of Block corners in Panting Addition. If this road alignment had been unimproved forested conditions, the surveyor would not have discovered such a bounty of boundary evidence.

. . . By the surveyor field note evidence, it is clear that block corners were established prior to the Road Survey #541. Contrary to the declaration statements that established road ways did not exist from 1890-1903, there is evidence that some form of access was

---

[1] Clerk's Papers (CP) at 38-39.

3

developed for the Panting Addition settlers. The right of way boundaries were clearly marked on High Street prior to the 1914-1915 Road Survey #541.[2]

Bob Heirman was born in 1932 and grew up in a house located on the road now known as 66th Street. Heirman's parents had lived in the house before he was born. In a declaration, Heirman recalled that 66th Street existed as a gravel road before it was paved. Heirman's grandparents had purchased a nearby farm off Bickford Avenue in 1906. Heirman also knew a neighbor who had built his house on 66th Street in 1909.

Except for the 1890 plat map of Panting's Addition, the parties have not identified any records from 1890 to 1903 referencing the Right of Way in the Plat.

The Trust purchased its property in 2006. The statutory warranty deed includes a legal description that notes a previously vacated street and that places the parcel north of the High Street Right of Way:

> COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF VACATED SENECA STREET WITH THE NORTH LINE OF HIGH STREET, PANTING'S ADDITION TO SNOHOMISH THE TRUE POINT OF BEGINNING.[3]

John Robinett, the Trust's trustee and manager, is an experienced real estate agent and owns a real estate agency.

---

[2] CP at 100.
[3] CP at 43.

4

In 2012, after a survey disclosed the encroachment, the Trust filed this quiet title action against Bickford and the City of Snohomish (collectively Bickford). The Trust alleged that under Washington's nonuse statute, Laws of 1889-90, chapter 19, section 32, the Right of Way had remained unopened and unused for at least five years after its dedication in 1890, and had therefore reverted in equal shares to the predecessors of the Trust and Bickford. The Trust further alleged that it had adversely possessed the portion of the Right of Way that had reverted to Bickford's predecessors.

The parties eventually filed cross motions for summary judgment. The trial court granted summary judgment in favor of Bickford and the City, concluding that the Trust had failed to establish an essential element of its claim under the nonuse statute and that in any event, the doctrine of laches barred the Trust's claim.

ANALYSIS

Standard of Review

When reviewing a grant of summary judgment, an appellate court undertakes the same inquiry as the trial court. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

The moving party can satisfy its initial burden under CR 56 by demonstrating the absence of evidence supporting the nonmoving party's case. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. Kendall v. Public Hosp. Dist. No. 6, 118 Wn.2d 1, 8-9, 820 P.2d 497 (1991).

To satisfy this burden, the nonmoving party

> may not rely on the allegations in the pleadings but must set forth specific facts by affidavit or otherwise that show a genuine issue exists. Additionally, any such affidavit must be based on personal knowledge admissible at trial and not merely on conclusory allegations, speculative statements or argumentative assertions.

Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 198, 831 P.2d 744 (1992) (footnotes and citations omitted).

### Nonuse Statute

In 1890, the Legislature passed the "nonuse" statute, which provided:

> Any county road, or part thereof, which has heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time.

Laws of 1889, ch. 19, § 32, p. 603; see Wells v. Miller, 42 Wn. App. 94, 96-97, 708 P.2d 1223 (1985).

> By this enactment, the Legislature fixed a statutory time limit within which the county was required to perform the condition of the grant. If the purpose of the grant was not accomplished within 5 years, a reversion of the authority to construct a road would result. When the street has not been opened within that 5-year period, the right of abutting property owners to the vacated street vests by operation of law.

Wells, 42 Wn. App. at 97 (internal quotation marks and citations omitted).

The statute was amended in 1909 and now excludes roads dedicated by plat. See RCW 36.87.090. The 1909 amendment did not, however, affect the rights of abutting property owners to streets that were dedicated and unopened for five years before the amendment. Gillis v. King County, 42 Wn.2d 373, 377, 255 P.2d 546 (1953). The burden of demonstrating a street has remained unopened for the statutory period rests on the proponent of the claim. Brokaw v. Town of Stanwood, 79 Wash. 322, 325-26, 140 P. 358 (1914).

To demonstrate that High Street was not opened or developed for five years after its dedication in 1890, the Trust relies almost exclusively on the surveyor's comment in the 1903 Schubert Road Report that there was "no other road in the vicinity which is of equal utility for the citizens in the vicinity of said proposed road."[4] The Trust maintains that the County's approval of the 1903 petition "would make no sense if the 1890 right of way had been opened and developed."[5]

---

[4] CP at 315.
[5] Br. of Appellant at 6.

But the Trust's argument rests on the unsupported assumption that the road proposed in the 1903 petition also included the High Street Right of Way. The Trust fails to address that portion of the surveyor's notes, that expressly set forth the "names of persons interested in lands over which said proposed road will pass, who consent to the establishment of the same."[6] The only persons identified are three owners of property in Section 6, Township 28, Range 6, land located outside of Panting's Addition, to the east and north of the High Street Right of Way. The report also purports to list "all persons interested in lands over which said proposed road will pass who refuse their consent,"[7] but does not identify any owners who refused consent to the proposed road.

If High Street was unopened in 1903, then the property owners along the Right of Way would have had to sign the petition as "persons interested in lands over which said proposed road will pass."[8] Under the circumstances, the Schubert Road Report fails to support an inference that High Street remained unopened as of 1903.

The Trust's reliance on the absence of evidence in Snohomish County's "file relating to the 1890 Plat dedication and subsequent road dedications" is equally misplaced.[9] The Trust asserts that the County would have had to

---

[6] CP at 315.
[7] CP at 315 (emphasis added).
[8] CP at 315.
[9] Br. of Appellant at 6.

undertake some affirmative action to open the Right of Way and that the absence of such evidence in the file supports an inference that the Right of Way remained unopened after its dedication in 1903.

But the Trust cites no relevant authority to support this conclusory assertion. Moreover, it has long been the rule that the complete absence of evidence does not satisfy a proponent's burden under the nonuse statute:

> In the case before us, we have no evidence whatever that Rainier street was unopened for public use during any portion of the period from the time of its dedication in 1891 to the taking possession of this portion thereof by respondents in 1902. For aught that appears in this record, and we are to remember that all of the evidence presented to the trial court is before us, Rainier street, along in front of respondents' lots, may have, during this entire period, been actually physically open for public use, unobstructed, unenclosed, and by nature well suited for ordinary travel by such means as are in common use upon public highways. Shall we presume to the contrary, in the total absence of proof upon that question? We are of the opinion that we should not do so, and that the burden of showing that such a street has remained unopened for public use for the period named in the statute should be upon those who rest their claims upon such a fact.

Brokaw v. Town of Stanwood, 79 Wash. 322, 325-26, 140 P. 358 (1914). Nor has the Trust identified any evidence suggesting the physical characteristics of the Right of Way after 1890 prevented its use as a street. See, e.g., Cheney v. King County, 72 Wash. 490, 130 P. 893 (1913) (evidence affirmatively demonstrated that the right of way was not open as a street and not physically capable of use by the usual means of travel). A party may not rely on mere speculation to defeat a

9

properly supported motion for summary judgment. <u>Seven Gables Corp. v. MGM/UA Entm't Co.</u>, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

Because the Trust failed to identify any evidence raising an inference that High Street was unopened for public use after 1890, the trial court properly dismissed its claim under the nonuse statute on summary judgment.

Laches

The Trust also challenges the trial court's determination that laches barred the Trust's claim. Laches, an equitable defense based on estoppel, applies when a defendant affirmatively establishes "(1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such fact; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to defendant resulting from the delay in bringing the action." <u>Davidson v. State</u>, 116 Wn. 2d 13, 25, 802 P.2d 1374 (1991).

(1) <u>Knowledge of or Reasonable Opportunity to Discover Cause of Action</u>

As to the first prong, the Trust asserts that John Robinett had no knowledge of or reasonable opportunity to discover the encroaching Right of Way. The Trust also claims that the "reference in the title report raised no red flags."[10]

But the Trust fails to address the metes and bounds legal description on the statutory warranty deed that places the property north of the "north line of High

---

[10] Br. of Appellant at 9.

Street, Panting's Addition." Nor does the Trust dispute that the Plat of Panting's Addition disclosing the 70-foot High Street Right of Way is a readily available public document and that the Snohomish County Online Property Information Interactive Map clearly shows the High Street Right of Way running through the house on the Trust property.

It is well established that the Trust and its predecessors in interest "are charged with knowledge of the facts constituting nonuse as "'[a]ll persons are charged with knowledge of the provisions of statutes and must take notice thereof.'" Real Progress, Inc. v. City of Seattle, 91 Wn. App. 833, 844, 963 P.2d 890 (1998) (quoting Davidson, 116 Wn.2d at 26). The trial court properly found that Bickford satisfied its burden on the first prong of the laches test. See Real Progress, 91 Wn. App. at 844.

(2) Unreasonable Delay

As to the second prong, the Trust asserts that Robinett "did not unreasonably delay his suit to solve the problem."[11] In its reply brief, the Trust adds that the nature of the Right of Way and location of a long-established road "explain and justify the delay in addressing" the issue.[12] The Trust provides no meaningful legal argument or citation to relevant authority to support these conclusory assertions. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345,

---

[11] Br. of Appellant at 9.
[12] Reply Br. of Appellant at 3.

779 P.2d 249 (1989) (appellate court will generally decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

Here, more than 110 years passed before the Trust filed a lawsuit under the nonuse statute. This was sufficient to satisfy Bickford's burden on the second prong of the laches test. See Real Progress v. Seattle, 91 Wn. App. at 844 ("waiting over 100 years" to file an action under the nonuse statute was sufficient to satisfy a party's burden to demonstrate an unreasonable delay for purposes of laches).

(3) Material Prejudice

Our Supreme Court has noted that the "doctrine of laches commonly recognizes the unavoidable loss of defense evidence as establishing material prejudice." Davidson, 116 Wn.2d at 26-27 (62-year delay deprived the State of substantial evidence). As exemplified by the declaration of 83-year-old Bob Heirman, the long delay in bringing suit in this case resulted in the inevitable loss of witnesses who could have provided first-hand evidence about the use and physical characteristics of the High Street Right of Way from 1890 to 1895.

The Trust's reliance on Real Progress v. Seattle is misplaced. In Real Progress, the court's determination that the city of Seattle had failed to demonstrate prejudice rested on evidence of an aerial photograph showing no development, a map noting the area of the dedicated street was "impassable," and expert testimony that the street area was "impassable to vehicular traffic." Real

Progress, 91 Wn. App. at 844-45. In light of such affirmative evidence demonstrating an area with "impassable" physical characteristics, the court concluded the city of Seattle would have been unable to establish that the street had been opened within five years of platting. No comparable affirmative evidence was available here. The trial court properly found that the delay materially prejudiced Bickford's ability to obtain relevant evidence.

Because there was no material factual issue as to laches, the trial court properly entered summary judgment in favor of Bickford.[13]

Affirmed.

_Trickey, ACJ_

WE CONCUR:

_Mann, J._                    _Becker, J._

---

[13] Because it was based on the nonuse statute, the trial court properly dismissed the Trust's adverse possession claim.